# Pennsylvania Coal Company, Plff. in Err., *v.* Daniel Nee et Ux.

Where a boy, fourteen years of age, employed by a coal company to keep culm in motion down a chute, in a coal breaker, being outside the chute when it required his attention, started to go into it, presumably by an opening other than that prepared for the purpose, and fell and was caught by the moving machinery and was killed,—*Held* (in an action brought by the boy's parents against the employer-company for damages for their son's death, on the ground that the company was guilty of negligence in leaving the machinery of the breaker unguarded and in a dangerous condition, etc.), that the case was properly submitted to the jury and that their verdict in favor of the plaintiffs should not be disturbed.

In such a case, a verdict for $1,250, was considered moderate and just.

In such a case, if the deceased was instructed by his employer to enter and come out of the chute at a certain place, and he us-d another place of entrance in violation of instructions, then the employer is not to be held responsible for any result of such violation of instructions; but if the deceased was simply shown such certain place by which to enter, and he found that his coemployees were all in the habit of using the other place of entrance, and this was known to the person in charge, and deceased was not forbidden to use such other place, then the employer is not relieved from responsibility even though the accident to the deceased occurred in consequence of his attempt to enter the chute at such other place.

(Argued February 21, 1888.   Decided April 30, 1888.)

July Term, 1887, No. 112, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Court of Common Pleas for Wayne County to review a judgment in favor of plaintiffs in an action of trespass on the case for negligence, December term, 1885, No. 164.   Affirmed.

At the trial the following facts were disclosed by the evidence:

The Pennsylvania Coal Company, defendant below, operated a coal breaker at Hawley, Wayne county, at which the plaintiff's son, Patrick Nee, a boy of fourteen, with other boys, was employed.   The duty of these boys was to attend the inclined chutes through which the culm, collected in the process of screening coal, was conducted into the cars.   They stood or sat in the culm chutes; and when the culm failed to slide down freely they pushed it down with shovels.

These screens and chutes were on the north side of a platform some 14 feet square; and on the opposite side of the platform were other screens and chutes, of similar character and operated in like manner.   This platform was some 15 feet above the ground.   It was reached from the outside by a short flight of steps descending from a gangway that ran along the side of the breaker, and which, in turn, was reached by a stairway from the ground.

In a pit at the end of the platform opposite the entrance was a drum wheel, 8 feet in diameter, set with the rim toward the platform and about 3½ feet below it.   A driving belt extending upward from this wheel ran the machinery of the breaker.

On each side of the platform was a partition separating it from the portions of the building in which the screens and

chutes were erected. In the framework of the partition, on the side where the plaintiff's son was employed, was a triangular opening, the side of which farthest from the driving belt was 3 feet 4 inches high, and 7 feet from the edge of the platform next the belt; and the bottom was 3 feet long. This was the entrance to the culm chutes. There were other openings about the breaker, through which the chutes could be reached; but this was the regular entrance. Among the other openings sometimes used for passage in and out of the chutes, was one in the side of the chute, 16 inches wide, nearly opposite the driving belt, and about 20 inches from its edge.

The employees at the breaker, including the boys at the culm chutes, were required to work from seven in the morning until six in the evening, with an interval of an hour, from twelve to one for dinner. There was nothing in the employment of the boys at the culm chutes that required them to come out on the platform during working hours.

Between 11 and 12 o'clock on the forenoon of November 19, 1885, when young Nee had been six days in said employment, a young man named Curran, who was drawing culm from the chutes, observed that the culm no longer came down the chute at which the plaintiff's son was employed. He called to young Nee to shove down the culm, but received no answer. He went up into the breaker, in search of the boy, or to learn why the culm had stopped, and coming upon the platform on the side opposite the chute at which he was employed, saw young Nee and another boy sitting on the platform near the steps. On seeing him they started, while Curran passed out on the gang way to look for John Howley, the breaker boss, without observing where the boys went. Suddenly the machinery of the breaker stopped. Curran heard a moan, and coming down on the platform and looking into the wheel pit saw young Nee caught between the belt and the wheel. He notified the engineer to stop the engine, and with some assistance took the boy out. The latter was still alive, and on being asked how he got into the wheel said that he fell in. He died a few minutes later, without saying anything more.

It did not appear certainly how, or from what point, the boy fell into the wheel, but it was probable that he fell while trying to climb into the chute through the opening last mentioned.

Some forty or fifty boys had been employed at these culm

chutes since they had been in operation—a period of about seven years—none of whom had ever been injured while at their employment, or in going to or coming from it; nor had any remark or complaint been made of danger in going in and out.

Other facts appear from the opinion.

The court, SEELY, P. J., charged the jury substantially as follows:

Daniel Nee and Catherine, his wife, bring this action to recover of the Pennsylvania Coal Company compensation for the loss of the services of their son, whose death they allege was occasioned by the negligence of the defendant. In order to sustain this action they must show: First, that the defendant has been negligent—has failed to discharge some duty which it owed to these plaintiffs; second, that the death of this lad was occasioned by that negligence; and third, it must appear upon a review of all the evidence in the case that neither they nor the boy were guilty of any negligence which contributed in any degree whatever to this accident resulting in his death.

As we have had occasion to say during the week in your hearing, perhaps, wherever it appears from the evidence that a person claiming damages by reason of the negligence of another person has himself been guilty of some dereliction of duty, some want of care which he ought to have exercised, which has contributed in the slightest degree (it matters not in what degree) to produce the result complained of, the law deprives him of the remedy to be sought by an action in this form, and he could not recover damages, for the reason that when it once becomes evident that the plaintiff has been in fault and that the damages are in some degree to be attributed to his fault, it is utterly impossible for the courts to say, or juries, whether the accident would have happened at all, or the injury occurred, if it had not been for that fault; and so under those circumstances we do not allow a recovery.

Then you should keep in mind, throughout the consideration of this case, that there are three points upon which the recovery of the plaintiff is dependent: First, Has he shown that the defendant has been guilty of negligence? second, Has he shown that the injury was occasioned by that negligence? third, Upon a review of all the evidence does he appear, himself, to be free from negligence which contributed to this result?

Now, negligence is the want of the exercise of that care and diligence which the circumstances require. Some circumstances require a greater degree of care than others. Ordinary care is such care as a man of ordinary judgment and prudence would exercise under the circumstances shown. This boy was employed, as you understand, about this coal breaker. Every person working about machinery is necessarily exposed to danger to a greater or less extent. When the father of this boy applied to Mr. Howley for a place for his son, knowing that Mr. Howley was in charge of this breaker, he understood that if his boy was employed about that breaker he would be exposed to certain dangers; and then he undertook to be responsible for all the risks and dangers that were ordinarily appurtenant to that kind of employment; he undertook to be responsible for those ordinary risks.

It was the duty of the Pennsylvania Coal Company (as it is the duty of every employer) to provide for its employees such apparatus and appliances as will reasonably protect them in the exercise of their duty, in the employment in which they are engaged—not to protect them in the highest degree against danger, but reasonably to protect them against danger, so that with the exercise of ordinary care and diligence they may be guarded against danger.

Has it been shown that the defendant failed in providing such appliances? The burden of proof is upon the plaintiff to satisfy you by the weight of evidence that the defendant has been guilty of negligence in the case. If the evidence balances in your minds,—fails to lead you to a conclusion,—that would be fatal to the plaintiff's case, because the burden rests upon him to satisfy you and to satisfy you by a preponderance of evidence—that fact would remain unproved, and he could not recover.

We said defendant was bound to provide such appliances as would protect its employees, using ordinary care and diligence. We ought to say further that when boys are employed about any work they are required to exercise ordinary care and diligence, and this ordinary care and diligence of which we speak is such care and diligence as a boy of this age, of ordinary prudence, would exercise under the circumstances. Now, we say to you, that whatever may be true about this gearing that is spoken of in the chute, even if the defendant was negligent in

exposing that gearing, that gearing did not produce this injury to the boy, and it would not be liable for that negligence, because that negligence must be such as produces the result in the case. The negligence alleged in this case is a want of protection about the belt and drum. Be careful to confine your attention to these precise questions in this case, and ascertain just what the truth is with regard to them. You have some conflict of evidence with reference to this platform—as to how near the belt it was constructed. Now, with reference to the testimony upon that subject, as well as the testimony upon all other matters in this case, we say to you that the credibility of witnesses is for you. . . .

Perhaps the first question (rather than this question of the platform) is the question of the provision of an entrance for the boys into this chute. There is some conflict of evidence here. Now, if the defendant provided a safe, convenient means of access to this chute, for the boys there, and directed them to use that means of access, and they, in disobedience of these directions, chose to take some more risky and dangerous method of going to and from their work, the defendant would not be responsible for the consequences of such increased risk. If, however, the defendant had given no specific directions to this boy in this case, as to where and how he should enter upon this chute, and had observed that the boys were in the habit of entering and coming from the chute at a place other than that which had been prepared for that purpose, then we think it would be bound, in view of that observation, to either forbid the boys going to and from their work at this more dangerous place, or else to use such safeguards as might more easily protect them in using this other means of access to their work. You have the evidence with reference to this matter—as to how the boys went to and from their work, and you have the evidence of Mr. Howley as to what directions he gave to this boy. Were the directions such that for him to go to and from his work at this other opening that was spoken of was disobedience of orders? If it was, and this accident occurred by reason of such disobedience of orders, then the company ought not to be held responsible; if not, then you have other evidence as to what the boys were accustomed to do, and did he do just as the boys were accustomed to do in this case, and as the foreman knew they were accustomed to do, in entering and coming from this

chute? If so, the boy should have been warned, or the company must be held responsible for the ordinary protection of the boy coming and going in that way.

Then there comes the extent of that platform. Here is a difference of opinion—a difference of testimony, at least—as to how near the platform the belt was. There is no question, and the witnesses upon both sides say, that the position and working of the machinery would not be interfered with by having this platform constructed out near to the belt, as it was certainly afterward constructed. Some witnesses say there was a space of 2 feet; I think perhaps one states 2 feet and 3 inches (I am not certain about that) between the edge of the platform and the belt. Other witnesses—Mr. Howley, who was upon these works among them, gives a different statement of this matter, and says that in that space there was a plank 4 inches lower than the other platform, 15 or 16 inches wide, I think he makes it, running up to within 3 or 4 inches from this belt. I will say now that you are not to be governed by our recollection of the evidence. We state it in a general way, and you will remember the evidence as it is.

Now, who has the best means of knowing this matter? The men who reconstructed that work and put in the plank afterwards —Joseph Murran and James McNamara—are not clear (if we remember their testimony) as to what was done about the plank —one of them (McNamara) says: "I don't remember about the plank." He remembers about the railing put up; afterwards Mr. Murran was called back, and you will remember what he said about it. Now, who had the best means of observation? Who was most likely to know about this matter as to how the planks were laid at that point? Is some one mistaken about it? They disagree—if so, who is the person most liable to be mistaken about the construction of this platform at that point? Was such an opening there (as is alleged by the plaintiff) dangerous to a boy of the age of this boy, about this breaker, exercising ordinary care and prudence in the discharge of his duties going to and from his work at that time? Was it dangerous if constructed as the defendants say it was constructed by their witnesses? Now, this boy was found down upon the drum, between the belt and the drum. How he came in that position, no person knows. We can only arrive at a conclusion by inference from the situation and circumstances. Was there

anything in the employment of this boy that required him to be at any point in the discharge of his duty by which, without the neglect of ordinary care and prudence for such a boy, he could have fallen into such a place? Here is really the gist of the case, because if there was not such protection there provided as to give reasonable protection—securing reasonably the safety of these boys, then that was negligence, and if there was such an arrangement as to reasonably protect them if they were exercising ordinary prudence themselves, then it was not negligence.

This boy, at the time of the accident, or just before the accident, when he was last seen alive, was up on the platform. I think one of the witnesses says, "sitting there." You will remember the evidence about their being up on that platform and about this man calling to them to shove down the culm. Now what was he there for? If you find under all the evidence that it was proper for him to be there in the course of his employment at that time, why then, certainly, there was no negligence on his part in being there. If the duty that he had to do required him to be somewhere else and he was there simply in the neglect of his duty—in a place where he had no business to be, and the fact of his being there at that time is one of the circumstances which led to this accident, then this company ought not to respond in damages. Then, another question that you must determine under the evidence: You have heard all about how these boys were employed—what their situation is in there. Mr. Howley testified in this matter, and as we remember his testimony it was in some respects brought out by direct questions— he testified that the place for the boys to be after the machinery started, till it stopped, was in the chute. He testified that sometimes the boys came out there on that platform. He was asked the question if when there was no culm in there to shove down the boys did not come out and sit there, and he made the answer that "They did occasionally, I think, I don't remember." At another time he says that one boy might come out there, but the other boy would have to look after the work for both of them while he was gone.

Do not allow yourselves to be misled by any statement of the evidence which we may give, but recall it with all the other evidence about the boy's employment anywhere—whether he had any right to be out there. If he was merely playing around

these works and this accident resulted from that kind of conduct on his part, why, however much we might sympathize with the father we would have no right to place our hands in the pockets of the defendant in this case and compensate him; but if he were there in the discharge of his duty, and then was injured by proceeding in a proper manner back to the point where his work called him, and was injured by reason of the negligence of the defendant, then he would have the right to recover.

We are asked to answer certain written points by the defendant in the case.

1. An employer is required to provide for the safety of employees only while they are engaged in the line of their employment; that is to say, while they are engaged about the work they are employed to do, or something necessarily incident thereto, or arising from their physical necessities.

*Ans.* That proposition we affirm. It is substantially what we have just been saying to you. If this boy had left his employment—was out there without reason, and having neglected his duty, was not engaged in the line of his duty, as he ought to have been, for the company, it would not be responsible for an accident that might occur from such temporary abandonment of his employment. Something has been testified about the necessity of boys coming out from there (on the part of the plaintiff in this case)—the dust getting very thick and the cramped position in which they were at work which necessitated their coming out at working hours—all these matters you will take into consideration in determining whether that boy was rightfully out at the place where he is described as being just before the accident occurred.

2. In the present action the evidence fails to show that the employer neglected to make proper provision for the safety of plaintiffs' son while engaged in the line of his employment, and consequently the plaintiffs cannot recover.

*Ans.* We decline to affirm that proposition, because it involves a question of fact that we think must be submitted to you. [1]

3. To sustain this action the plaintiffs must show affirmatively that their son was killed while engaged in the line of his employment. The evidence fails to show this, and therefore the plaintiffs cannot recover.

*Ans.* This is another question which we have just been speaking about—whether he was engaged in the line of his employment at the time. If you find that he was not, then we should say that this point, so far as the legal proposition in it is concerned, would be correct; but so far as it raises a question of fact we submit that fact to you. [2]

4. In the present action, it is shown by the evidence, positively and without contradiction, that the plaintiffs' son was not engaged in the line of his employment where he met with the accident that caused his death, but that he had left the place where his employment required him to be, without any known excuse or necessity, and while thus absent was killed by falling in some manner unknown upon a drum 11 feet, or thereabouts, from this place of employment and separated from it by the timbers and side walls of the chutes in which he was employed to work. Consequently the plaintiffs are not entitled to recover, and the verdict must be for the defendant.

*Ans.* We decline to affirm this point for the simple reason that it asks us to take this case away from you and pass upon the questions of fact ourselves. [3]

5. It is shown by the evidence, positively and without contradiction, that nothing in the line of the employment of plaintiffs' son made it necessary for him to be on the platform where he was last seen alive during working hours, or while the breaker was going. Hence, if there was any danger in going to or from that platform when he was last seen there, it being during working hours, he incurred it without necessity, and the defendant is not liable for any injury he met with in consequence.

*Ans.* Now, if the facts are as alleged, that he incurred this risk without necessity, then the legal proposition is correct; but it comes back to this same question that it asks us to pass upon these facts, while we think that you should be governed by the rules of law as we lay them down to you. We think that we should not trench upon your province in this matter, and attempt to dispose of questions of fact. [4]

5½. It appears from the evidence that the plaintiffs' son was directed by the breaker boss to a place of entrance to his work, through which he could pass with safety by the exercise of ordinary care; hence, his death, so far as its cause is concerned, was not due to the negligence of the defendant and the plaintiffs cannot recover.

*Ans.* We cannot affirm this point, as it involves the same question which we have already called attention to, as to what his instructions were about entering at this place—whether going in at any other place was a violation of his instructions, or whether he had a right under the instructions that were given to him and under the surroundings there to go in and out at this other place. [5]

6. If the plaintiffs' son, after being directed by the breaker boss to a place of entrance to his work, attempted to enter at a more dangerous place, and was killed in consequence, he was guilty of contributory negligence, and the plaintiffs cannot recover.

*Ans.* We said to you that if he was directed to use this place of entrance—those were the instructions given him, that he should enter at this place and come out at this place, and he was using the other place of entrance in violation of instructions, that the company should not be held responsible for any such violation of instructions; but if he was simply shown this place to enter and he found that the other boys were all using the other place of entrance, and that this was known to the person in charge there, and that he was not forbidden to use it, then we think that the company would not be relieved from responsibility, even though the accident may have occurred in consequence of his attempt to go into the chute at the other place. [6]

7. The evidence is positive and uncontradicted that the plaintiffs' son was directed to a place of entrance to his work some 6 or 7 feet from the drum on which he fell; and it does not appear from the evidence that he fell on the drum while attempting to enter at that place. His neglect to enter at the place to which he was directed was contributory negligence; and the defendant is not liable for any resulting injury.

*Ans.* This is substantially the same as the last point. We simply decline to pass upon the question of fact raised in the point. [7]

8. Under all the evidence the verdict must be for the defendant.

*Ans.* We decline to so instruct. [8]

Now, there is no doubt about the fact which is the sad fact in this whole transaction—that this lad came to his death by coming in contact in some way with the machinery about this

breaker. The question is, and that question you must answer: Was it the fault of the defendant? How it happened we do not know—no one knows how he came in contact with this belt. From all the evidence in the case you must be able to ascertain that it came through the want of the exercise of some care on the part of the defendant, which care the defendant was required to exercise for his protection; unless the evidence shows that, it does not establish the case. If it does show that, then it does establish the case. With all the sympathy that we may feel for this father and mother, we should be careful not to wrong some one else in the attempt to compensate them for their loss. If the defendant is responsible for that loss, then the defendant should be required to make compensation, and cannot complain of the action of the court or jury in requiring it to make such compensation. If the defendant was not responsible for this accident, then we have no more right to require compensation of it than we would have to place our hands in its treasury and take out money for any other purpose. We are sitting here to ascertain what is right, and to do that, without any regard for the parties, one way or the other. Then comes this question of compensation—damages. The measure of damages is compensation.

The jury rendered a verdict for the plaintiffs for $1,250, and judgment having been entered thereon, defendant took this writ, assigning for error: (1–8) The refusal of its points, as above set forth.

*W. H. Dimmick* and *H. Wilson* for plaintiff in error.

*P. P. Smith,* for defendants in error, claimed that the case was analogous to Cambria Iron Co. v. Shaffer, 5 Sad. Rep. 105.

PER CURIAM:

The rectitude of the rulings and charge of the court below is so obvious as to require nothing from us in the way of their support. Moreover, under the facts as presented to us, we regard the verdict as moderate and just, so that the defendant has in our opinion no just cause of complaint.

The judgment is affirmed.