FLOYD D. JACKSON, a Minor, by EDWARD Z. JACKSON, His Curator, v. JAMES J. BUTLER and MERCANTILE TRUST COMPANY, Executors of Estate of EDWARD BUTLER, Appellants.

FLOYD D. JACKSON, a Minor, by EDWARD Z. JACKSON, His Curator, v. UNIVERSAL ADDING MACHINE COMPANY, Appellant.

**In Banc, April 8, 1913.**

1. **NEGLIGENCE: Master and Servant: Safe Place: Extends to Entire Premises.** The duty of the master to furnish his servants with a safe place in which to work is not restricted to the identical situs of the labor, but requires him to exercise ordinary care to see that the means of egress and all places about the premises known to the master to be used by his servants, even to the places which the foreman knows they use, by his acquiescence, at the noon hour in eating their lunch, are ordinarily safe.

2. ————: ————: **Repair of Building: Injury to Lessee's Servant: By Negligent Placing of Locker.** The owner of a building, occupied by a machine company as tenant, contracted with an independent contractor to add an additional story to the building, and the plans were approved by the tenant, and the work went on with his consent while he continued to occupy the lower floor. In the rear of the building was a runway, which inclined upwards towards the alley, which was five or six feet higher than the floor. Near the runway was a locker room, in which were lockers, in which the tenant's servants placed their clothing while at work. In order that the room might continue to be used and that the work of improvement proceed, the contractor removed some of the lockers from this room, and placed them against the runway in a leaning position. They were stood in pairs, one against the other, and having but two legs each they would not stand upright when out of place. Tarpaulin was placed over them to shut out the dust and dirt from the repairs going on above, and these covered both tops and sides, and partly obscured the view. Plaintiff, a boy, seventeen or eighteen years old, employed by the tenant, was allowed twenty-five minutes to go to the near-by toilet and wash room and to eat his lunch. He sat upon a heavy beam lying on the runway, placed there by the contractor, and just

Jackson v. Butler.

as he finished eating, one of the lockers fell, struck and injured him. The servants were allowed to eat wherever they chose, and the foreman knew that some of them sat on this runway while eating their lunch. *Held*, that plaintiff's employer, the tenant, was liable for his injuries, unless he is barred by his own negligence; and the liability arises from the duty of the master to furnish his servants a reasonably safe place in which to work, and knowing that they customarily used the runway while eating their lunches, and having given no direction to seek a different place while the improvement was being made, the relationship and the duty subsisted, and extended to the premises and accessories to the place of actual work.

3. ———: ———: ———: ———: ———: Liability of Landlord. But the owner of the building is not liable for plaintiff's. injuries.

4. ———: ———: ———: ———: ———: ———: Statutory Liability. The statute (Sec. 7857, R. S. 1909) dealing with liability arising from the neglect to perform a statutory duty is not applicable to the landlord, but to the employer of the injured person. Neither does section 7836 apply, for the reason, if for no other, persons of both sexes are not shown by the evidence to have been employed.

5. ———: ———: ———: ———: ———: ———: Extra Hazard: Proximate Cause. There is a distinction, both in law and in common usage, between the terms "hazardous" and "extra hazardous." The rules of law making the landlord liable, where he employs an independent contractor to perform extra-hazardous work, without adopting suitable means to protect others, are not applicable to the facts of this case, for no negligence of the landlord, or any omission of his duty, was the proximate cause of plaintiff's injury, but that injury was due to a falling of a part of the furniture of the tenant negligently misplaced by a servant of the contractor—an injury not reasonably to be anticipated, and not arising in causal sequence from the landlord's alleged omission of duty. [BROWN, J., dissenting.]

6. ———: Contributory: Use of Building Undergoing Repair. While plaintiff and all of his fellow-servants, by custom and the necessities of the case, were invited to use the part of the building undergoing repair and the part where he was injured, and while he was invited by long usage, without objection, to eat his lunch while sitting on the runway against which the servants of the contractor had leaned some lockers, one of which fell over and injured him, yet, if *sui juris*, it was his duty to have looked and observed his surroundings, so as not to expose himself to danger, and if he neglected that duty he was guilty of contributory negligence as a matter of law.

7. ———: ———: ———: **Immature Boy: Latent Danger: Matter for Jury.** But where the danger was latent and not obvious, the lethal instrumentality was partially or wholly covered, the persons charged with the duty of providing the servant with a safe place to work did not observe it and but one witness out of a dozen men claims to have seen the impending danger, the court is not warranted in declaring as a matter of law that the seventeen or eighteen-year-old boy was so negligent as to preclude recovery, but the issue of contributory negligence becomes one for the jury. The court cannot say that every child after he reaches the age of fourteen years is *sui juris*. Whether or not he is, depends upon his age, capacity and experience, and the facts and circumstances of the case.

Appeal from St. Louis City Circuit Court.—*Hon. Matthew G. Reynolds*, Judge.

AFFIRMED AS TO UNIVERSAL ADDING MACHINE COMPANY; REVERSED AS TO OTHER DEFENDANTS.

*Watts, Gentry & Lee* for appellant Universal Adding Machine Company.

(1) A master's duty to use ordinary care to provide suitable appliances and a safe place to work is limited to so furnishing them for the performance of the functions for which they are intended. Rutledge v. Railroad, 110 Mo. 312; Morrison v. Fibre Co., 70 N. H. 406; Durgin v. Munson, 9 Allen, 396, 25 Am. Dec. 770; Kern v. DeCastro, etc. Co., 125 N. Y. 50; York v. Railroad, 117 Mo. 405. Applying this principle the master is relieved where the use made of the appliance or place was different from that intended: (a) Riding on vehicles only intended for freight: Kern v. Ref. Co., 125 N. Y. 50; Ross v. Cross, 17 Ont. 31; Riordan v. Ocean S. S. Co., 124 N. Y. 655; Felch v. Allen, 98 Mass. 572; Morris v. Brown, 111 N. Y. 318. (b) Appliances improperly used for support of a servant's person: Morrison v. Fibre Co., 70 N. H. 406; Saunders v. Brick Co., 63 N. J. L. 554; Young v. Railroad, 69 N. H. 356; Graham v. Railroad, 63 Fed. 896; Bell v. Mill Co., 77 Miss. 387; Teetsel v. Simmons, 34 N. Y.

Supp. 972; Creberry v. Transit Co., 77 Hun, 74; Railroad v. Docherty, 66 Ill. App. 17; Jayne v. Coal Co., 109 Mich. 242; Tel. Co. v. Speicher, 59 N. J. L. 23. (c) Doing work in a manner different from that contemplated by the employer. Rysdorp v. Pankratz L. Co., 95 Wis. 622; Stetler v. Railroad, 46 Wis. 497; Cluny v. Cornell Mills, 160 Mass. 218. (d) Doing work with an appliance not designed for such a function. McPherson v. Bridge Co., 20 Ore. 486; Railroad v. Daniels, 73 Miss. 258; Maher v. Thropp, 59 N. J. L. 186; McKay v. Hand, 168 Mass. 270. (e) Using a part of the master's premises for a purpose for which it was not intended. Lenk v. Coal Co., 80 Mo. App. 374; Plunkett v. Railroad, 105 Ga. 203, 102 Ga. 577; Murphy v. Greeley, 146 Mass. 196; Williams v. Railroad, 119 Mo. 316. (2) The duty of the master to use ordinary care to provide a safe place to work is a relative duty dependent upon and restricted to several different elements: (a) The place must be in the control of the master: Yearsley v. Sunset Co., 110 Cal. 236; Channon v. Sanford Co., 70 Conn. 573; Whitton v. Sprague Co., 37 N. Y. Supp. 174. (b) The place must have been furnished by the master for the purpose for which the servant used it. (c) And the general rule is again qualified if the place is not yet constructed or repaired so as to be suitable for permanent use: 1 Labatt on Master and Servant, sec. 29, p. 66; Heald v. Wallace, 100 Tenn. 346; Fraser v. Lumber Co., 45 Minn. 235; McGinty v. Reservoir Co., 155 Mass. 183; Coal Co. v. Scheller, 42 Ill. App. 619; Armour v. Hahn, 111 U. S. 313; Minneapolis v. Lundin, 58 Fed. 525; Railroad v. Jackson, 65 Fed. 48; Railroad v. Brown, 73 Fed. 970. (3) The plaintiff was guilty of contributory negligence which barred his right of recovery. The mere fact that he was only sixteen years old does not prevent the application of the rule where he was bright and intelligent. McGee v. Railroad, 214 Mo. 530.

*F. W. Imsiepen* for other appellants.

(1) There was a total failure of proof to sustain a single one of plaintiff's vital allegations against defendant Butler tending to show the existence of a duty owing to plaintiff and there was no proof given or offered by plaintiff from which the trial court could have inferred the existence of any legal duty on the part of Butler to the lessee's employees or that plaintiff had a good cause of action against defendant Butler which might thereafter be set forth in an amended petition. If it is rightly assumed from proper inferences drawn by the trial court, upon the proof given, that the work of alteration and addition shown to have been in progress on the leasehold premises at the time of the accident complained of was being done by defendant Evans under his contract with Butler, then Evans was an independent contractor, and Butler was not liable for the negligent acts of the contractor and was not liable for the negligent acts of the lessee in permitting the lockers mentioned in the evidence to stand in a leaning and dangerous position while the building work mentioned in the evidence was in progress. 2 Thompson on Negligence, sec. 22, p. 899; Crenshaw v. Ulman, 113 Mo. 639; Shearman & Redfield, Negligence (5 Ed.), sec. 164. The evidence in this case shows beyond question that defendant Evans was an independent contractor for the entire job, of making the alterations and additions on the leasehold premises required by the terms of the contract between Butler, lessor, and defendant Adding Machine Co., lessee, the defendant Butler having nothing whatever to do with the management of the work, employment or payment of the hands or any power to discharge them. And it makes no difference that Butler had employed defendants Baker & Knell, architects, to superintend the work and to see that the contract was complied with. The liability of Butler depends on his relation with

Evans and the principle of *respondeat superior* applies to the contractor who employs the men, and whose servants they are, but not to Butler with whom the original contract was made. Cooley on Torts (3 Ed.), p. 1098; Crenshaw v. Ulman, 113 Mo. 639; Blumb v. City, 84 Mo. 112; City v. Slack, 134 Mo. 66; Morgan v. Bowman, 22 Mo. 538; Hilsdorf v. St. Louis, 45 Mo. 98; Clark v. Railroad, 36 Mo. 281; Barry v. St. Louis, 17 Mo. 121; Fink v. Furnace, 82 Mo. 276; 2 Thompson, Negligence, sec. 41, p. 913; Erie v. Caulkins, 85 Pa. St. 247; Callahan v. Railroad, 39 Oh. 461; School District v. Fuess, 98 Pa. St. 600; Keeley v. Mayer, 11 N. Y. 432; Robinson v. Webb, 11 Bush, 464. (2) There was no proof offered tending to show that Butler had interfered with the contractor. Brown v. Peat, L. R., 1 Q. B. D. 321, 45 L. J. Q. B. 446; Hughes v. Percival, 8 App. Cas. 444; Lloyd, B. & Buildings, sec. 81 (1894), p. 139. There was no proof offered tending to show that the building work would probably injure others, or that Butler knew that the work which he ordered Evans to do would create a nuisance. Guardians v. St. Lenords, 2 Q. B. D. 145; Gray v. Pullen, 11 L. T. R. (N. S.) 569; Ellis v. Strand, 93 Law Times, 354; Wilber v. White, 98 Me. 191; Hilliard v. Richardson, 3 Gray, 349, 63 Am. Dec. 743.

*Frederick A. Mayhall* and *Virgil Rule* for respondent.

(1) Judge Valliant in Holmes v. Railroad, 190 Mo. 105, tersely states the rule as to the duty of the court; the care required to avoid injuring minors, and the care required of the minor. We call attention to these potent facts: Under our statute the master was required to furnish water closets. The place on the chute where this boy was injured was directly between the wash room and water closets. It was a place where in the ordinary course of events the 200 or more boys employed by this master would pass in the thirty min-

utes allotted for lunch. The evidence shows this place was constantly used by these boys—it shows that they ate their lunch there—they were going in and out there over this chute during the half hour and six or seven were at the time not more than five or six feet away, farther down the chute. Yet the master for two days permitted these ponderous steel lockers to be leaning up against this chute—and in a position where, owing to their construction, they were liable to tumble over at any minute. The detached lockers, being without legs on one side, would not stand unless fastened against a wall. The dangerous position of the lockers which injured plaintiff were partially obscured by being covered by a tarpaulin. Under these facts, the master's failure to know of the dangerous condition of this chute for two days and his failure to remove the danger or warn the boys, was gross carelessness; at least reasonable men might fairly differ on the question. (2) As to the contributory negligence of plaintiff, we submit that before that can be sustained as a matter of law, all reasonable men, under the facts and circumstances shown in evidence must draw the conclusion that this boy in placing himself upon this chute did a thing that no other reasonable boy of his age, experience and discretion would do. Zellars v. Water & Light Co., 92 Mo. App. 117. An owner or person in charge, having control over premises, must keep his premises in such condition as to be reasonably free from danger. If necessary where he maintains dangerous places in the prosecution of his business he must have such places guarded or give warning of their existence. This rule applies to any person lawfully upon the premises. Miller v. Peck D. G. Co., 104 Mo. App. 614; O'Donnell v. Patton, 117 Mo. 13; Welch v. McAllister, 15 Mo. App. 492; Sykes v. Railroad, 88 Mo. App. 193; Hartman v. Mueshlebach, 64 Mo. App. 578; Tinkle v. Railroad, 212 Mo. 415; Hollis v. Merchants Assn., 205 Mo. 508; Ewald v. Railroad, 70 Wis.

420; McGregor v. Auld, 83 Wis. 546; Helmke v. Thilmay, 107 Wis. 221; Rodger v. Printing Co., 103 Mo. App. 683; Lenk v. Coal Co., 80 Mo. App. 374, 381; Pipe Line Co. v. Neusbaum, 21 Ind. App. 361; Walbert v. Trexler, 156 Pa. St. 117; Glaser v. Rothschild, 106 Mo. App. 418; Franke v. St. Louis, 110 Mo. 516. The servant is not charged with the duty of inspecting the place to detect lurking dangers. Browning v. Kaslen, 107 Mo. App. 59; Franklin v. Railroad, 97 Mo. App. 473. A servant does not assume the risk of injury from defects which are not obvious. Keegan v. Kavanaugh, 62 Mo. 230. (3) The "Noon Hour Cases" decide that the relation of "Master and Servant" exists, where the servant remains upon the premises and the period of time for lunch is short. 2 Labatt, Master and Servant, No. 626; Walbert v. Trexler, 156 Pa. St. 112; Cleveland Co. v. Martin, 13 Ind. App. 485; Evansville v. Maddox, 134 Ind. 571; Broderick v. Depot Co., 56 Mich. 261; Kennedy v. Chase, 119 Cal. 637; Olson v. Railroad, 76 Minn. 149. The duty to furnish a "safe place" and appliances applies not only at the identical situs of the work but at all places within the contemplation of prudent persons, that might be used by ordinarily prudent persons exercising ordinary care under the circumstances. Young v. Oil Co., 185 Mo. 634; Irmer v. St. Louis Brew. Co., 69 Mo. App. 17; Schultz v. Moon, 33 Mo. App. 329; Musick v. Packing Co., 58 Mo. App. 322; Lore v. Mfg. Co., 160 Mo. 608; Hoepper v. Hotel Co., 142 Mo. 378. (4) Whether the employer retains control over the work to be done and the manner of doing it, so as to render himself responsible for injuries occasioned by the negligence of contractors in the performance of the work, depends upon the construction to be given to the contract. Linnehan v. Rollins, 137 Mass. 123. The general rule is, that one who lets a contract for work, and retains no control over the work, or the method of doing it, is not liable for the negligence or other wrong of the contractor, but

to this general rule there are several exceptions, to-wit: First. Contracting for unsafe result. If the employer contracts for improper material or an unsafe plan, or generally an unsafe result, he remains liable for damages occasioned thereby, although the work is done by an independent contractor. Huffcut on Agency, 276; Gorhan v. Gross, 125 Mass. 232. The proprietor of a building who lets a contract for making repairs that are unusually dangerous, if precautions are not taken, the proprietor is liable. Eberson v. Ins. Co., 130 Mo. App. 303; Casey v. Bridge Co., 114 Mo. App. 59. Second. Statutory liabilities to conduct work efficiently. If the employer is under an obligation of positive law, to do a particular thing, or to observe particular safeguards, he cannot relieve himself of this liability by putting the work into the hands of an independent contractor. Hole v. Railroad, 6 H. & N. 488; Rubin v. Swigart, 7 Ohio, 638; Downey v. Low, 22 N. Y. App. Div. 460. A positive duty imposed by law cannot be delegated. Sec. 6441, R. S. 1899, and Sec. 7836, R. S. 1909, declaratory of the common law, provide that separate water closets shall be provided for the use of either sex in manufacturing, mercantile and other establishments in the State, where both sexes are employed. Where the master violates a statute or ordinance, by failing to guard dangerous machinery under Sec. 6433, R. S. 1899, and Sec. 7828, R. S. 1909, he may be held guilty of two acts of negligence. First, for a failure to guard machinery, which can be guarded, and, second, where the machinery is dangerous and cannot be guarded, he is guilty of negligence for failure to post notice of its dangerous character. Peters v. Mfg. Co., 133 Mo. App. 412; Huss v. Bakery Co., 210 Mo. 52. The positive duty imposed by law of keeping premises which you control reasonably safe, likewise cannot be delegated, and we contend that there was obviously a joint occupancy and joint control, and *ipso facto* a joint obligation upon defendants to keep the

premises where plaintiff was compelled to go in a reasonably safe condition. Welch v. St. Louis, 73 Mo. 71; Russell v. Columbia, 74 Mo. 480; Long v. Moon, 107 Mo. 334; Wendlet v. House Furn. Co., 165 Mo. 527; Lore v. Mfg. Co., 160 Mo. 608. Third. Extra-hazardous work. If work is extra-hazardous and such that in the natural course of things injurious consequences are likely to ensue unless suitable means are adopted to prevent such consequences, the employer is liable. The employer must use due care in the adoption of such means. Bower v. Peate, L. R. 1 Q. B. D. 321; Thompson v. Railroad, 170 Mass. 577; Cameron v. Oberlin, 19 Ind. App. 142; Gaslight Co. v. Norwalk, 63 Conn. 495; Boneparte v. Wiseman, 89 Md. 12; Bridge Co. v. Steinbrock, 60 Oh. St. 215; Wetherbee v. Partridge, 175 Mass. 185. This exception to the general rule has been applied in cases of excavations of lands, endangering the support of adjoining property; to an exhibition of markmanship; to the clearing of land by fire; to the removal of dangerous walls, and to blasting. Fourth. Safety of premises. If the owner of property contracts for work to be done around it, he is as to invitees bound to keep the premises in a safe condition and cannot excuse himself on the ground that the premises are under exclusive control of the contractor. Curtis v. Kieley, 153 Mass. 123; Coughtry v. Woolen Co., 56 N. Y. 124.

FARIS, J.—The plaintiff, a minor, through his curator, filed this action in the circuit court of the city of St. Louis, for personal injuries. The court, at the close of plaintiff's evidence, sustained a demurrer thereto; whereupon plaintiff entered an involuntary nonsuit, which nonsuit was, upon the motion of plaintiff, subsequently made, set aside and a new trial granted as to all the defendants except Baker & Knell. Said Baker & Knell were original defendants, made such on the theory that they were joint tortfeasors, arising

from their being, as architects, in charge of the repair work hereinafter referred to.

Edward Butler was a party defendant at the trial below, but having since died, the cause was revived against James J. Butler, and the Mercantile Trust Company, as executors of his estate. One Daniel Evans, a building contractor for the repairs in question, and employed by a contract with Edward Butler to make the same, was also a party defendant. From the order granting a new trial, defendant Universal Adding Machine Company (hereinafter for convenience called the Machine Company), and Edward Butler took separate appeals to this court. For convenience, since the case was tried below as a unit, these appeals will be considered here together. Defendant Evans did not appeal from the order granting a new trial, and need not have further place in the case here, except in so far as his acts may affect others.

It is alleged in plaintiff's petition, and shown by the evidence, that on the date on which plaintiff was injured, to-wit, August 9, 1907, and for some months prior thereto, defendant Machine Company was operating a factory in a building owned by defendant Edward Butler in the city of St. Louis, and that in July, 1907, while defendant Machine Company was thus, as tenant, in possession of said building, Edward Butler contracted with defendant Daniel Evans to add an additional story to the building in question, and that Butler employed defendants Baker & Knell as architects to supervise the construction by the contractor Evans of this additional story. The plans for the changes proposed in the building were approved by the Machine Company, the latter agreeing to pay an increased rental after the completion of the additional story, and agreeing, upon completion of the same, to enter into a new lease with defendant Edward Butler, to run for fifteen years. Such proposed new lease was not in fact executed, but merely agreed so to be. The

defendant Machine Company employed some two hundred persons, a large number of whom were boys from fifteen to eighteen years of age. The plaintiff, at the time of his injury, was between seventeen and eighteen years of age.

In the rear of the building in question there was a passageway leading through the building and into an open alley on the north; in this passageway an inclined platform, or runway, was placed. This runway was constructed, except for the latter five or six feet, on an incline, starting at about a distance of fifteen inches from the floor, running on a level for some four feet, and then inclining upward to the point of egress on the alley, which alley was some five or six feet higher than the floor of the building. On one side of this runway and of the passageway in question, there was located a locker room, and on the other side of said passageway and runway a toilet room. The locker room was supplied with metal lockers, which were used by plaintiff and other employees within which to place their clothing while at work. These lockers were constructed of large wire mesh, strengthened by iron bands at the corners, top and bottom, and were about five feet in height.

In preparing to erect the additional story on the building, the employees of contractor Evans entered the locker room of defendant Machine Company, removed the wire screen which separated the locker room from the runway and passageway, and partially filled it with lumber and other material. In order that the place might be thus used and in order to place in position certain large beams with which to support some part of the work that Evans was preparing to construct, it became, or was deemed, necessary by the contractor to remove some of the lockers, which was done, and the lockers removed were taken out into the passageway and placed in a leaning position against the

inclined platform. These lockers when in use stood in pairs, one set against the other, and having but two legs to the locker they, for this reason, would not stand upright when out of place. At the time of the injury a large wooden beam, some fifteen feet or more in length and twelve by fifteen inches in diameter, had been placed by the contractor on the inclined platform, and was thus lying at the time of the injury to plaintiff, August 9, 1907. During the noon hour of that day, while plaintiff was sitting on this beam between the lockers and the watercloset, eating his lunch, one or more of these lockers fell, struck him upon the back, rendered him temporarily unconscious and produced the injuries for which he sues. The nature and extent of these injuries we need not here discuss, further than to say that the evidence touching them is substantial and sufficient for the purpose of covering the points in issue here.

As shown by the testimony on the part of the plaintiff, under the rules by which plaintiff worked, he and his fellow-servants were allowed only some twenty five minutes at the noon lunch hour within which to visit the watercloset, to wash their hands in the wash troughs situated in the locker room, and to eat their lunches. At 12:25 plaintiff was required to be back at his bench ready to resume labor at the sound of the gong.

The testimony in this case, as given by plaintiff himself and other witnesses for plaintiff (including the foreman of defendant Machine Company in charge of the department in which plaintiff worked), was that during the noon hour the employees were allowed to and did eat their lunches wherever about the building they chose. Some of them sat at their benches while eating; some of them frequently sat on the inclined platform or runway while eating; others went out into the alley, presumably over the runway, and others to a grocery store across the street. There was evidence

in the case that the locker, or lockers, which fell upon plaintiff, had been standing in their leaning positions against the runway for some two days before the same fell injuring plaintiff. The latter testified that he did not observe that the locker, or lockers, which fell, were in a dangerous position prior to his injury, or that, from their position, they were likely to fall. These lockers, and perhaps others not here in question, prior to and. at the time of their falling, were covered by a tarpaulin, which tarpaulin practically covered both the top and sides of the lockers, and necessitated a raising of the tarpaulin in order to see the lockers. However, one of plaintiff's witnesses testifying for him, states that the lockers' as they leaned against the runway or platform looked dangerous to him, and that he thought they were liable to fall.

As stated, the lockers which fell were leaning against the runway or inclined platform and were therefore very near the toilet rooms. These toilet rooms as well as the wash troughs in the locker room, were continued in use by the foreman and superintendent of defendant Machine Company, as well as by all of the employees thereof, during all the time the repairs were being made. No other toilet rooms, wash troughs, or lockers were provided. Such condition of use by all parties also continued, as the evidence shows, during the whole of the time that the lockers in question were so leaning against the platform. It is not clear from the evidence whether the identical locker, or lockers, which fell upon plaintiff, were being used for clothes or not; but it is clear that the locker room and many other of the lockers were being so used, plaintiff testifying that he was then using his locker, and that it was in the passageway between the inclined platform and the corner of the locker room. Since, however, the entire roof of this part of the building was, at the time of the injury, off, and since a tarpaulin had been spread over the lockers for some purpose, we may reasonably

infer that the lockers in question and which fell, were thus being used, and that the placing of the tarpaulin thereon was done to prevent injury to the clothing contained therein, from the falling of dirt and dust due to the building operations.

In other words, the testimony does not disclose any change in use of any part of this portion of the premises while the repairs were proceeding. The evidence indicates conclusively that the wash troughs, the waterclosets, the passageway and some, if not all, of the lockers, were being used while the repairs were making, for the same purpose and just as these accessories had been theretofore used, and subject only to the inconvenience arising from the timbers and other material placed therein and thereabouts, and from the removal and change in position of the lockers.

The foreman of defendant Machine Company, testifying for plaintiff, says that the employees of said company were permitted to eat their lunches at any place about the building they chose; that he gave them no instructions as to this, either before repairs began or while same were proceeding; that he got no orders from his superiors as to this matter and that he gave none to plaintiff or to plaintiff's fellow-servants.

Defendants representing Edward Butler, deceased (herein for brevity, called Butler), are sought to be held liable from the fact that Butler was the owner of the building, the landlord of defendant Machine Company, and that as such owner he contracted for a hazardous and unsafe method of doing the repair work, reserving to himself, through his architects, Baker & Knell, the right to inspect and supervise such work. His ownership of the building is not controverted; the fact that possession and operation of the factory by defendant Machine Company continued during the repair work, appears from the record, and the reservation of the right to supervise and inspect, so far as it

appears in the case, is shown by the excerpt below from Butler's contract with Evans; viz.:

"It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the said architects, and that their decision as to the true construction and meaning of the drawings and specifications shall be final."

We shall refer in the opinion to the duty enjoined upon defendant Machine Company, as set out in plaintiff's petition, as well as the manner in which said alleged duty is averred to have been violated by defendants.

The answer of the defendants is a general denial to which is added a plea of contributory negligence, averred to have arisen from the alleged act of plaintiff in going to and remaining in a part of the building where he was not obliged to go in the discharge of his duties as the servant of defendant Machine Company, and which place was not at the time a place furnished for the use or convenience of plaintiff, and that plaintiff contributed to whatever injuries he sustained by failing to exercise ordinary care to observe his surroundings, and get out of the way of the locker in question. Plaintiff's reply was a general denial.

Such other facts as it may become necessary to state, if any, will be set out in the subjoined opinion.

I. The issues clearly made by the pleadings, with which, and with the legal contentions made, we are under the evidence alone concerned, are: (1) Was there any actionable negligence? (2) If so, whose negligence, or omission of duty, caused the injury? and (3) could the plaintiff be guilty, and was he, under the facts, guilty of such negligence on his part, as contributing to his own hurt, precludes recovery? These in their order.

According to the petition the duty alleged to be enjoined upon defendants, in carrying on their business, and in using the instrumentalities necessary and provided, and in part at least required by statute to be provided, therefor, is thus stated:

**Negligence Charged.**

"That the said defendants herein, jointly and severally, had, kept and maintained upon said premises, among other things, the following machinery, appliances and equipment, to-wit: Certain ponderous iron or steel lockers, water closets and platform; that said machinery, appliances and equipments were situated in the rear part of said premises, and were provided by the defendants herein for their joint and individual use, and for the joint and individual use, convenience and accommodation of the servants and employees of the defendants herein, and for persons invited to use or occupy the said premises by the said defendants; that it was the duty of the defendants herein, jointly and severally, to maintain the said premises, machinery, appliances and equipments aforesaid in a reasonably safe condition."

And the negligent omission in the performance of the duty is stated thus:

"That the said defendants jointly and severally neglecting and disregarding their duties aforesaid, neglected to furnish, provide and keep the said premises, at the time and place aforesaid, in a reasonably safe condition, and carelessly and negligently invited plaintiff into a place of danger."

The specific act of negligence averred and that which is said to have caused plaintiff's hurt, is alleged to be "that one of the lockers was negligently and carelessly placed by defendants in a leaning and dangerous position at a point near the said water closet," and that while plaintiff, being there in the line of his duty, was seated on the platform mentioned, the locker fell and injured him.

That one or more of these lockers was leaning against the runway and that such locker or lockers fell on plaintiff and injured him, is abundantly shown by the testimony. He was not at the point where he was hurt by reason of his visit to the water closet. But he was there for the purpose of eating, and he did eat his lunch there; being seated for this purpose on a large timber, which timber was lying on the runway aforesaid between the locker room and the water closets. Having finished his lunch, he *was in the act of throwing away* the paper in which his lunch had been wrapped (he says he "went to throw it away," but from the context we gather that he means what we have above assumed), when the locker fell and he was struck and injured. Was any duty owed him at this time and place? Under the rules of the master, as the evidence shows, but twenty-five minutes were given plaintiff at the noon-hour within which to visit the water closet, to wash his hands, to eat his lunch and get back to his work bench, ready, on the sound of the gong, to resume his labor. Plaintiff and his fellow-servants were, and for a long time had been, in the habit of eating their lunches, without objection, and without any instructions as to other or different places, "at any place they wanted to." During the time the repairs in question were making and long prior thereto, plaintiff and his co-employees, had used this runway or inclined platform for this purpose. We

Master and Servant: Safe Place.

concede that it does not avail to contend, as learned counsel for plaintiff erroneously do, that the obligation enjoined upon plaintiff's employer to furnish safe premises and a safe place to work was violated, for the reason merely that, under the law, the closets and wash rooms so furnished were latterly found to be pitfalls and dangerous, that by this lapse of duty, liability has accrued herein. This contention falls out of the case because of lack of facts on which to bottom it. Plaintiff was

not injured while using the closets, or the wash room, or the lockers. There is no proximate cause between his injury and the necessity for using such wash room and closets. He had used these accessories and remained unhurt. He was hurt simply and solely from the fact that he sat from ten to twenty minutes on the runway eating his lunch. The fact that plaintiff was required to use, because no others were provided, the water closets and the wash room, in their then condition of unrepair and confusion, has no place in the case, except as broadening and accentuating the general invitation to plaintiff to continue using the rear part of the premises just as had been done before the beginning of the repair work thereon. This phase of continuing invitation, after repairs were begun, is also presented by the testimony in the case, from the continued use of some of the dismounted lockers, and of the runway as a means of access to the alley, and to the grocery store over the way where some of the employees ate their lunch. That the lockers had been torn from their places, and stacked, or placed, in a leaning position, against the runway, is abundantly shown by the proof; that they were thus placed, and remained so placed, for at least two days, in a situation to which and by which, the several invitations noted above extended, we have already seen, and that they were dangerous is shown by the fact that they fell of their own accord—*res ipsa loquitur,* on this latter point.

Under the facts as we find them in the record before us, we think that the duty to furnish plaintiff safe premises and a safe place in which to work, was violated, since under this rule such safe place to work is not restricted to the identical situs of the labor, but extends to the exercise by the employer of ordinary care to see that the means of egress and ingress are ordinarily safe, and extends to all places about the premises, known to the master to be used, or which

might by the use of ordinary care be so known to be used, by the employees. [Heldmaier v. Cobbs, 195 Ill. 172 (injury occurred at noon-hour lunch, as here); Boden v. Demwolf, 56 Fed. 846; Indiana Pipe L. & R. Co. v. Neusbaum, 21 Ind. App. 361; Brick Co. v. Fisher, 79 Kan. 576; Jacobson v. Mill Co., 107 Minn. 74; Moore v. Pickering Lumber Co., 105 La. 504; Iron & Wire Co. v. Green, 108 Tenn. 161.]

In the instant case actual knowledge of such use of the rear part of the building on the part of the foreman of the Machine Company, who had charge of the straightening department in which plaintiff was employed, is shown by the record. This foreman says that the employees were free to eat their lunches wherever they chose, and that during the time the repairs in question were being made, and at the time of the injury of plaintiff, the water closets and wash rooms were being used by employers and employees.

The fact of the intermission for the purpose of eating lunch did not, under the facts shown in evidence here, suspend the duty owed by the employer to furnish the employee a safe place to work. [Heldmaier v. Cobbs, 195 Ill. 172; Railroad v. Maddux, 134 Ind. 571; Boyle v. Columbian Fire Proofing Co., 182 Mass. 93; and cases cited, supra.]

We conclude, therefore, that there was a breach of a duty owed to plaintiff, and that unless his own negligence caused his injury, there was a liability existing upon some one or more defendants, to respond therefor in damages.

II. By whose negligence was the injury caused? From what has been said above herein, we conclude that a liability existed (the exception of non-liability, by reason of contributory negligence barring recovery being reserved) as against the defendant Universal Adding Machine Company.

We deduce this liability, not from the fact that the said Machine Company placed, or caused to be placed,

*Lessee's Liability: Contractor's Negligence.* the lockers in question in the dangerous position in which they were. The testimony shows very clearly that these lockers were torn loose from their fastenings and set up in their leaning position against the runway by the employees or agents of defendant Evans, who is not appealing here. But this liability arises from the fact that it was the duty of the defendant Machine Company to furnish plaintiff a reasonably safe place to work. [Purcell v. Tennent Shoe Co., 187 Mo. l. c. 285; Fisher v. Lead Co., 156 Mo. 479; Holmes v. Brandenbaugh, 172 Mo. 53; Koerner v. St. Louis Car Co., 209 Mo. l. c. 157; Wendler v. Furnishing Co., 165 Mo. 527; Curtis v. McNair, 173 Mo. 280.] Such safe place to work cannot, as we have said, be narrowly restricted to the precise situs of plaintiff's labors, but must under the facts in this case, be held to apply, and to broaden or extend the master's duty in such behalf to all parties and places in the building, used and known so to be used by plaintiff, with the master's knowledge and implied consent arising from continued user. [Penn. Coal Co. v. Nee, 13 Atl. 841.] The foreman of defendant Machine Company knew that the employees were in the habit of eating lunch wherever they chose so to do. No directions to seek another or different place, pending the work of building, were given. The relationship of master and servant still subsisted under the evidence here. [Woodward Iron Co. v. Curl, 153 Ala. 215, where servant was injured in going after drink of water; Railroad v. Turner, 99 Tex. 547, where servant was injured while attending a call of nature.] Then the duty of furnishing a safe place to work was incumbent upon defendant, and included the premises (other than the precise place of actual work) to which plaintiff was invited to go by the act of defendant Machine Company in furnishing in and about the place

of danger the accessories mentioned above. [Ryan v. Fowler, 24 N. Y. 410, where plaintiff was injured by the falling of a water closet on defendant's premises; Smith v. Peninsular Car Works, 60 Mich. 501, where plaintiff was injured indirectly by ice outside of defendant's factory.]

But, the owner of the leased building is sought **Landlord's** by plaintiff to be charged with negligence, **Liability:** as a joint tortfeasor, upon one or more of **Independent** **Contractor's** four alleged reasons. Plaintiff frankly **Negligence.** concedes in the brief filed by his learned counsel that he is arguing up-hill against the general rule in this behalf, which rule counsel state thus:

"The general rule is that one who lets a contract for work, and retains no control over the work or the method of doing it, is not liable for the negligence, or other wrong of the contractors."

The four reasons urged by counsel for plaintiff, as exceptions to the general rule, which they concede, and upon one or more of which they seek to fix liability upon Butler, are (a) contracting for an unsafe result; (b) statutory liability to do the work efficiently; (c) that the work was extra-hazardous, and (d) the duty of the owner to maintain the safety of the premises.

We have with great care examined the cases cited by counsel, on the several points urged. On the exception (a) to the general rule our attention is called to the case of Gorham v. Gross, 125 Mass. 232, which was an action in tort for the resulting damages, from the falling of a party-wall, built by an independent contractor under contract with the defendant, where the latter reserved and exercised the privilege of supervision through architects. Here the reason for the accrual of liability was clearly, that the owner had contracted for an *unsafe finished result.*

The statute cited on the exception (b) dealing with liability arising from the neglect to perform a

statutory duty (Sec. 7857, R. S. 1909), is not applicable to Butler, however much it may be in point as to the Machine Company, for the reason that its provisions apply to the employer and not to the landlord.

The cases cited upon the exception (c) making the landlord liable, where he employs an independent contractor to perform extra-hazardous work, without adopting suitable means to protect others, are not in point on the facts here. The case of Wetherbee v. Partridge, 175 Mass. 185, was in tort for damages done by an independent contractor, acting for defendant therein in doing blasting on the land of defendant. There is, we take it, a distinction, both in law and in common usage, between the term hazardous and the term extra-hazardous. That the work which Butler had agreed with defendant Machine Company was attended with danger, the continued use of the building pending the work considered, we concede, and if any of the dangers which we can conceive as probable had in fact occurred (e. g., the falling of brick or stone or tools or other objects upon the employees), and plaintiff had been injured by such objects, or if the walls, or the roof being improperly or unsafely constructed, had fallen and in falling hurt plaintiff, this case might fall into the category of one of the exceptions urged. We merely suggest this; we are not called on to pass on it here.

The grounds upon which liability of a landlord accrues for torts occurring upon his real property, where the same is being dealt with by an independent contractor, are clearly stated by Mr. Moll in his treatise on Independent Contractors, section 65, page 127, as follows:

" 'As well stated in recent New York cases, there are but three cases in which the owner of fixed property is responsible for acts done upon it which result in injury to another: (1) Where the person doing the act stands towards the proprietor in the rela-

Jackson v. Butler.

tion of employee or servant; (2) where the act as authorized by a contract between the proprietor and actor *necessarily* produced the injury; (3) where the injury was occasioned by the omission of some duty imposed on the proprietor.' 'Where the employer personally interferes with the work and the acts performed by him occasion the injury; where the thing contracted to be done is unlawful; where the acts performed create a public nuisance; and where the employer is bound by statute to do a thing efficiently and an injury results from its inefficiency; these are the only cases where a person employing a contractor is liable for his torts.'

" 'The rule of independent contractor (i. e., employer) and non-liability for the negligence of a contractor employed by him, or by the agents or servants of the latter, is subject to exceptions: First, when duties are imposed upon him by law, (a) by statute or ordinances, (b) by express contract to indemnify: Second, where the employer is at fault, (a) in defective construction inherent in the plan, (b) where he retains the right to direct the time and manner of work, (c) ratifies or adopts unauthorized wrongs, (d) by not furnishing proper appliances required by law, (e) interfering with the work, or (f) is negligent in selecting a careful contractor: Third, where the work to be done is wrongful or dangerous in itself (a) that it would ordinarily cause a nuisance, (b) where the job in its very construction ordinarily becomes dangerous, however carefully performed.' "

But whatever the hazard or unsafeness of Butler's methods of repair may have been, plaintiff was not hurt by anything in such methods, approaching the stature of a proximate cause. He was hurt by the falling of a part of the furniture, or a trade fixture it may have been, of defendant Machine Company, which was negligently misplaced by a servant of defendant Evans. [Boss v. Jarmulowsky, 81 N. Y.

Supp. 400.] It does not follow that the mere fact that Butler may have been guilty of some omission of duty, amounting to neglect, that such fact will create a liability against him. Plaintiff must go further and show that his injury accrued as a proximate result of such omission of duty. It will not do to say that Butler was negligent, *ergo*, Butler is liable. Butler's neglect might be patent and glaring, yet if the accident accrued from other causes than such neglect, no liability grows from it. [Hudson v. Railroad, 101 Mo. l. c. 35; Sira v. Railroad, 115 Mo. 127.] Granting for argument's sake, Butler's omission of duty, can it be said that if defendant had been struck by lightning and injured, or if the boilers of the Machine Company had exploded injuring plaintiff, for these things, by reason of negligence in a different behalf, recovery could be had against him? For an injury not reasonably to be anticipated, and not arising in causal sequence from the alleged omission of duty shown by the evidence here, defendant Butler is not liable. [Louthan v. Hewes, 138 Cal. 116; Ridgeway v. Downing Co., 109 Ga. 591; Hoff v. Shockley, 122 Iowa, 720.] As we gather, said omission of duty is predicated upon Butler's failure to have his architects see that the work was properly and safely done, as it is urged he had in the contract between him and the contractor Evans, reserved the right to do, as witness the below excerpt from the contract offered in evidence:

"It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the said architects, and that their decision as to the true construction and meaning of the drawings and specifications shall be final."

It may, we think, be conceded that an employer "may make himself liable by retaining the right to direct and control the time and manner of executing the work, or by interfering with the contractor and

assuming control of the work, or of some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference. But merely taking steps to see that the contractor carries out his agreement, as having the work supervised by an architect, or a superintendent, does not make the employer liable; nor does reserving the right to dismiss incompetent workmen.'' [Moll on Independent Contractors, p. 126, sec. 65.] The excerpt quoted, so far from bringing Butler within a rule creating liability, takes him out of the rule. [McGrath v. St. Louis, 215 Mo. 191.]

No omission of statutory duty is involved as to Butler, for the reason, if for no other, that persons of different sexes are not shown by the evidence to have been employed, as required as a condition precedent by section 7836, Revised Statutes 1909. And pursuant to section 7857, Revised Statutes 1909, the duty enjoined goes to the employer and did not fall on Butler, the landlord. It is extremely probable that this is also the correct view as to the falling of the duty enjoined (violation of which is made penal) in section 7836, supra, but on this we need not pass. But it is not necessary to pass, in the view we take of it, upon the question whether, under all the facts here, the doing of the work by Butler, through his contractor, Evans, under the supervision of his architects, as shown by the excerpt supra, constituted so unsafe a place, or was a contract for so unsafe a result, as rendered Butler liable on this ground alone, for the defaults of his independent contractor. Should we find it necessary, as we do not, to pass on this point, there is such lack of evidential detail in the case as to render it impossible to apply the law urged upon us, to the paucity of fact shown by the record. Much, it seems to us, would depend upon the present-day ability of architects and builders to do these things safely. We do not know from the evidence here, nor

are we allowed judicially to notice, how far modern science had advanced in rendering safe such operations, nor how far the customs and usages of carpenters, architects, contractors and builders may or may not have caused that to be considered ordinarily safe now, which before, to the uninitiated, would have been held highly dangerous.

We do say that the mere displacement of a part of the furniture, the personal property of defendant Machine Company, situated upon a different floor of the building from that intended to be repaired by defendant Evans, was not, under the facts here, such proximate cause of the injury to plaintiff to make Butler liable, but was merely what has been called a casual or collateral tort of the independent contractor, and that as to Butler the court erred in setting aside the involuntary nonsuit. [Moll on Independent Contractors, sec. 66; Boss v. Jarmulowsky, supra; Hoff v. Shockley, supra; Louthan v. Hewes, supra; Ridgeway v. Downing Co., supra.]

III. Coming now to the last point urged by appellants, and laid aside for discussion, viz.: (a) Can plaintiff, a minor, between seventeen and eighteen years of age, upon the facts, be charged with contributory negligence barring recovery; and (b) was there, under the facts here, such negligence as would bar him from recovery if he were *sui juris?*

Answering the last query first, we deem it reasonably clear upon the facts before us that if plaintiff's conduct is to be weighed in the same scales and measured by the same rule by which we weigh and measure the acts of an adult, he was guilty of such contributory negligence as bars recovery. The reasons upon which we base this view, we need not discuss, further than to say, that while plaintiff and all of his fellow-servants by custom and the necessities of the case were

**Contributory Negligence: Boy.**

invited to use the part of the building undergoing
repair, and the part in which he was injured, and
while he was invited by long usage and by custom,
without objection, to eat his lunch where he was eating
it when injured, it was yet the duty of one *sui juris*
to have looked and observed his surroundings, so as
not to expose himself to danger. Defendant Machine
Company, at least, is not in the position of being heard
to say that plaintiff had no right whatever to be in
that part of the building for any purpose. Upon this
defendant lay the statutory duty to furnish water
closets for its employees. [Sec. 7857, supra.] Un-
less it concede that the conditions involved the contin-
uing invitation to use the water closets while their
situation was dangerous, then this defendant admits
violation of a plain statute. For if it did not furnish
those closets which were in a zone of danger, it fur-
nished none whatever.

There is no fixed rule of law by which to gauge,
or scale by which to nicely weigh, the acts of a minor,
to determine if he is guilty of contributory negligence.
Each set of facts stand, in a sense, upon their own
bottom, and are to be judged by commonsense—of
the variety sometimes called in the vernacular, "horse-
sense."

Touching this question and its corollaries, confu-
sion exists among the authorities which would be as-
tounding, but for the comforting maxim of the old
copy-book, that "circumstances alter cases." In fact
the usual legal definition of ordinary care must give
us pause, it having been said to be that "care which
an ordinarily prudent person would exercise under
similar conditions and circumstances." We notice ju-
dicially that jurors are never infants—in years. They
are told in effect to pass upon the question of ordinary
care by squaring the facts upon their own conduct as
persons of prudence and in the last analysis and upon

common sense, they can have no other criterion. "The rule is well established that the same standards do not apply in the case of an *infant of tender years* and an adult, so far as the doctrine of contributory negligence is concerned; for, . . . 'no court can hold that childhood and manhood are bound to observe the same degree of diligence.'" [1 White on Personal Injuries on Railroads, sec. 313; Railroad v. Young, 81 Ga. 416.]

In the case of Higgins Carpet Co. v. O'Keefe, 25 C. C. A. 220, it was laid down as a rule that after passing the age of fourteen years a child is presumed to be capable of avoiding danger by the exercise of due care. "And this," says Labatt, 1 Master and Servant, sec. 348, "is probably the rule in all jurisdictions." After collecting all of the authorities the above-named author's deductions may be thus summed up: "(a) An infant of the age of fourteen years is presumed to have sufficient capacity to be sensible of danger and to have power to avoid it, and this presumption will stand till overthrown by clear proof of the absence of such discretion. (b) An infant between the age of ten and fourteen years *must* be shown to have capacity, in the particular instance, to understand and avoid danger." [Beven on Negligence in Law (3 Ed.), footnote, p. 166.] "The measure of responsibility varies with each additional year. It makes no sudden leap at the age of fourteen. That is simply the convenient point at which the law, founded upon experience, changes the presumption of capacity, and puts upon the infant the burden of showing his personal want of the intelligence, prudence, foresight or strength usual in those of such age." [Beven on Negligence (3 Ed.), p. 166.] "But generally, where the age of the infant is such as to make it a debatable question whether or not he possessed sufficient intelligence or experience to know or appreciate the danger he encountered, as a result of his own act, the ques-

tion would be held a jury issue, to be determined with reference to his age, capacity and experience and knowledge of the particular danger.'' [1 White on Personal Injuries on Railroads, sec. 313.] ''Whether or not an infant has been guilty of contributory negligence defeating an action for an injury received by him, is, ordinarily, a question for the jury, as it is to be determined by the evidence and inferences therefrom, measured in the light of the employee's age and capacity to appreciate his surroundings and the dangers of his employment.'' [1 White on Pers. Inj. on Railroads, sec. 314, footnote, citing 82 Tex. 623; 56 Ind. 511; 83 Ind. 191; 91 Ala. 635; 8 Ga. 195; Goins v. Railroad, 37 Mo. App. 676; Goins v. Railroad, 47 Mo. App. 173; 144 Pa. St. 348; 94 Ind. 250.] ''A minor may be chargeable with contributory negligence, but he is only chargeable with that degree of care commensurate with his maturity and capacity.'' [2 Bailey's Pers. Inj. (2 Ed.), 1338; Rogers v. Meyerson Ptg. Co., 103 Mo. App. 683.]

Our own courts have encountered the same difficulties in devising a rule in this behalf as have the courts of other jurisdictions: VALLIANT, J., in Holmes v. Railroad, 190 Mo. l. c. 105-106, tersely states the rule as to the duty of the court, the care required to avoid injuring minors, and the care required of the minor, as follows:

''We have said that it is sometimes a question of fact and sometimes a question of law, and such is the form of expression frequently used by law-writers on this subject, and in a certain sense it is correct. Strictly speaking, however, the question of whether a child is old enough to be held responsible for his conduct as for contributory negligence is always a question of fact appealing to common sense, rather than to the science of law for an answer. But when the evidence is all one way and such that there can be one answer

to the question the court should decide it without submitting it to the jury. . . .

"And even when a child has reached years of discretion, and become, as a matter of law, responsible for his conduct, no higher degree of care will be expected of him than is usually exercised by persons of similar age, judgment and experience. . . . And conversely, a much higher grade of care and watchfulness must be exercised to avoid injuring children than would constitute ordinary care towards an adult; that is, what is ordinary care towards an adult of full capacity may be culpable negligence towards a child. As the standard of care thus varies with the age, capacity and experience of the child, it is usually, if not always, where the child is not wholly irresponsible, a question of fact for the jury whether a child exercised the ordinary care and prudence of a child similarly situated; and if such care was exercised, a recovery can be had for an injury negligently inflicted, no matter how far the care used by the child falls short of the standard which the law erects for determining what is ordinary care in a person of full age and capacity.' "

Judge VALLIANT then quotes from an opinion of Judge MACFARLANE, in Burger v. Railroad, 112 Mo. 238, as follows:

"A boy may have all the knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness and discretion to avoid them, which are possessed by the ordinarily prudent adult person. Hence, the rule is believed to be recognized in all the courts of the country, that a child is not negligent if he exercises that degree of care which, under like circumstances, would reasonably be expected of one of his years and capacity. Whether he used such care in a particular case, is a question for the jury. [Beach on Contributory Negligence, sec. 117; Eswin v. Railroad, 96 Mo. 290; O'Flaherty v. Railroad, 45 Mo. 70;

Plumley v. Birge, 124 Mass. 57; Meibus v. Dodge, 38 Wis. 300; Railroad v. Young, 81 Ga. 397.]''

''That is the doctrine of this court announced in many other decisions. [Spillane v. Railroad, 135 Mo. 414; Ruschenberg v. Railroad, 161 Mo. 70; Campbell v. Railroad, 175 Mo. 161.]''

The rule is quoted by GANTT, J., from an opinion by Mr. Justice LAMAR, U. S. Supreme Court, in O'Mellia v. Railroad, 115 Mo. l. c. 221, as follows:

''The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.''

Judge BLAND of the St. Louis Court of Appeals, considering this troublesome point, in Saller v. Shoe Co., 130 Mo. App. 722, said:

''As a youth grows in years and experience, he becomes more and more amenable to the rules of law in respect to the assumption of risk and contributory negligence applicable to adults, but there is no period of minority at which a court can say, as a matter of law, he, in this respect, stands on the same plane as an adult. His capacity, not his age, is the criterion by which his responsibility and conduct should be measured; and whether or not a youth assumes the ordinary risks incident to his employment, or was guilty of negligence which contributed to his injury, where no instructions are given or the dangers of his employ-

ment pointed out to him by his employer, is almost always a question for the jury, and is always so where different inferences are fairly deducible from the evidence. [Anderson v. Railroad, 161 Mo. 411; Heinzle v. Railway, 182 Mo. 528; Anderson v. Railroad, 81 Mo. App. 116; Fry v. Transit Co., 111 Mo. App. l. c. 333; Edwards v. Railroad, 112 Mo. App. l. c. 659; Butler v. Railway, 117 Mo. App. 360.]"

LAMM, J., in the case of McGee v. Railroad, 214 Mo. l. c. 546, while holding under the facts shown that contributory negligence barred recovery, said:

"When an issue of fact is framed and put to a jury on the question of the negligence of a minor the general rule is to so frame the instruction as to graduate the degree of care demanded of a child to his age and capacity. That rule requires that a child should be judged as a child and not as a man. But the rule does not mean that the question is always to be submitted to a jury. Children may be declared as a matter of law *non sui juris* at certain tender years and with certain infantile judgments. Then, again, they may be declared *sui juris* as a matter of law when their age, capacity and the circumstances under which they act are all considered. It may be taken as the most enlightened and accepted doctrine in the case of infants that generally the question of their contributory negligence is one for the jury. But it is not the accepted doctrine that it may not under given circumstances be dealt with as a matter of law. If the facts are few and simple, devoid of confusion and complications, and if the danger to be avoided is so apparent as to be within the easy comprehension of a boy of thirteen years of age, if that boy is shown to be of bright intelligence and of a judgment training him to caution and care in the matter in hand—we say all these things being admitted, then there is no reason why the judge on the bench may not as a matter of law

under the facts of the given case declare there could be no two opinions among reasonable men about the negligence of such a boy measured by the standard of an ordinarily prudent boy.''

Where the danger is well-known, plain, patent and obvious, and where the minor is of an age setting in action the presumption of law noted, and when he is bright and intelligent, no reason can be urged against holding him accountable for his own negligent acts. But where, as in the instant case, the danger was latent and not obvious, where the lethal instrumentality was partially or wholly covered, where the persons charged with the duty of providing for plaintiff a safe place to work did not observe it, and where, indeed, but one witness out of a dozen men claims to have seen the impending danger, are we warranted in declaring as a matter of law, that the infant defend-- ant was so negligent as to utterly preclude recovery. The triers of fact having the plaintiff before them may be able from his manner on the stand, of testifying, from his appearance, intelligence and other facts to say whether as to the danger to which he exposed himself, he shall be judged as a child or as a man full-grown. We relegate to the triers of fact the decision upon this point and hold that the question of whether plaintiff was, under the facts, guilty of contributory negligence, is a question for the jury.

It results that the case should be reversed as to James J. Butler and Mercantile Trust Company, as executors of Edward Butler, deceased, and affirmed and remanded as to the defendant Universal Adding Machine Company, and it is so ordered. *Lamm, C. J.,* and *Woodson, Graves, Bond* and *Walker, JJ.,* concur; *Brown, J.,* concurs except in what is said touching the non-liability of Butler, to which he dissents.