INIS BYRD, ADMINISTRATRIX, ETC., RESPONDENT, v. MISSOURI PACIFIC RAILROAD COMPANY, APPELLANT.—46 S. W. (2d) 221.

Kansas City Court of Appeals.   January 11, 1932.

*Trusty & Pugh* and *Thomas C. Swanson* for respondent.

*Montgomery & Rucker* and *Thomas J. Cole* for appellant.

CAMPBELL, C.—On the night of January 19, 1929, J. M. Byrd, a member of defendant's switching crew, at work in defendant's yards in Wichita, Kansas, was killed in consequence of being struck and run over by a car or cars set in motion by the crew while they were engaged in making up a train. Decedent's widow was appointed administratrix of his estate, and in her representative capacity brought suit based upon the Federal Employers Liability Act to recover damages for the alleged negligent death of her husband. She had verdict and judgment for $6500, and defendant has appealed.

The fact that defendant and decedent were, at the time of the fatal accident, engaged in interstate commerce, is not questioned.

It is alleged in the petition that "defendant was negligent in the following respects:

"1. In that defendant was then using and moving in said train in said yards and plaintiff was working with cars that did not have couplers thereon then in such condition that the same would couple automatically by impact without said deceased being or going between the same to aid in such coupling movements, all in violation of the Federal Employers Liability and the Federal Safety Appliance Acts.

"2. In that although said switching crew was engaged in shifting or shunting various and different cuts of loose cars onto track . . . to make up a drag of cars to be moved to the yards south of said place, and it was deceased's duty to be about said cars in the performance of his duties, and he was last seen by the other members of said crew when the first cut was sent onto said track and while he was riding on the side of the same to where the same was stopping

so as to be in position to handle and work with the other cuts as they came onto said track, and although it was the regular custom and requirement of defendant, not to move an engine in the yards without knowing where each member of the crew was located; and it was negligence to move cars without knowing where each member of crew was; the other members of said crew negligently violated said custom and requirement in that they caused or permitted a certain car or cars to move on said track where plaintiff's deceased was without any warning and without knowing where deceased was located and when he was not in sight and had disappeared from their vision, and he got into danger of moving cars through the negligence of the defendant.''

During the trial plaintiff obtained leave to amend the petition by interlining therein an additional ground of negligence as follows: ''In failing to keep its premises free from articles over which employees would likely fall and be injured.''

The answer is a general denial.

At the close of the evidence defendant requested the court to direct verdict in its favor. The request was refused, and that ruling is assigned as error.

The cause was submitted upon the ground of negligence alleged in the amendment to the petition. Counsel for the defendant argues that the plaintiff thereby waived the other grounds of negligence.

The rule sought to be invoked is not applicable to the situation shown by the record. The request for directed verdict was made and ruled upon before plaintiff had requested an instruction. Therefore, if there was evidence sufficient to sustain any of the grounds of negligence pleaded, the request was correctly ruled.

In a like situation it was said: ''If the record then justified the action of the court, no subsequent action of the parties can make that error, which was not error at the time the ruling was made.'' [Schroeder v. Wells, 276 S. W. 60, 310 Mo. 642, 652.]

If there was legally sufficient evidence to sustain either ground of negligence the trial court cannot be convicted of error in refusing to direct verdict for the defendant.

It is not claimed that there was any evidence to sustain the first ground of negligence.

The evidence which it is claimed tends to support the second ground of negligence is that decedent and other members of the switching crew were engaged in making up train No. 78; that it was the duty of decedent, who was known as the field man, to watch the cars that were run upon the several tracks, to set the brakes on such cars and to see that the couplers thereof were open; that on the night of the accident the crew pulled twenty-five or thirty cars upon the lead or main track from switch track No. 3; that they cut off six of those

cars "making a switch" down the main track in a westerly direction; that the six cars were kicked and moved on, and the engine and remaining cars were stopped; that decedent rode one of the six cars, hanging onto the side thereof with one foot in the stil stirrup; that after he rode away on one of the six cars he was not again seen alive; that it was his duty to cause the six cars to stop, and to see that the couplers were open; that after he passed from the vision of other members of the crew they moved other cars along the tracks at various places in the yards; that it was the custom and practice when the field man passed out of view of the other members of the crew to not permit a movement of cars until he appeared; that on the occasion in question other members of the crew violated that custom by moving other cars upon the main track and switch tracks; that after the lapse of some thirty minutes to an hour from the time the six cars were switched, the crew went "back east" and found the body of decedent lying across the rail at or near the east end of the six cars above mentioned.

There is no evidence tending to show that any of the cars moved by the crew, after the decedent passed from their vision, came in contact with any of the cars upon one of which decedent was riding at the time he was last seen alive, nor is there any evidence that any of the cars which were moved by the crew, after decedent passed from their vision, were moved upon the main track to or near the place where the body was found.

The act of members of the crew in moving cars, after decedent passed from their vision, was an act of negligence. But negligence without injury is not actionable. Defendant's negligence "might be patent and glaring, yet if the accident accrued from other causes than such neglect, no liability grows from it." [Jackson v. Butler, 155 S. W. 1071, 249 Mo. 342, 366.]

We fail to find any evidence, and counsel has not called attention to any evidence, which tends to show that the negligent acts caused or contributed to cause the death of plaintiff's husband.

The trial judge, though requested to instruct the jury on the second ground of negligence, refused to do so. Upon the record the plaintiff failed to prove the second ground of negligence.

The question remaining is, was there any substantial evidence tending to sustain the third ground of negligence?

After the amendment of the petition a witness testified in plaintiff's behalf that he and Mr. Stevens, defendant's superintendent, went to the scene of the accident.

"Q. While you were there and Mr. Stevens was there, was anything done by Mr. Stevens with reference to releasing Mr. Byrd from anything? A. Yes, sir.

"Q. What did he do? A. I saw him reach down on Mr. Byrd's lower limb and give two or three tugs at a wire, and the wire appeared to be fastened on both ends—one end was fastened to the trouser leg of Mr. Byrd, and the other end was fastened, I judge, in the ground or on the rail—I didn't get a chance to examine it. He pulled it loose from the rail or ground and untwisted it about three or four times from Mr. Byrd's leg, and I didn't get a chance to examine the wire—it all happened in a few seconds time.

"Q. Which did he get loose first, the end from the ground or the end from his leg? A. The end from the ground.

"Q. What did he do with it when he got it loose? A. I don't know, I didn't get to see that. . . .

"Q. Tell how you happened to notice it that night? A. I had my flash light on a point toward the ground with my left hand—I was standing sideways toward the body, and I turned my head slightly and saw the wire move. . . .

"Q. You didn't go down the track to the east to see where the first blood was to be found to determine where the man was struck originally? A. I noticed some marks on the rails and ties approximately three or four feet, possibly five feet, east of the body. . . .

"Q. You know under the laws of Kansas nobody was permitted to touch a body or remove anything about the body until the coroner got there? . . .

"The Witness: You were not supposed to touch or move the body.

"Q. And you were an officer of the law? A. Yes, sir.

"Q. And you tell this jury you permitted a man—A. (interrupting) I did not permit him—it happened before I could say anything.

"Q. He unwound a piece of wire four times from a man's leg before you could get your tongue out of your mouth and in motion? A. Yes, sir, he removed the wire before I could stop him."

It will not be controverted that if the defendant knew of the location of the wire or by the exercise of ordinary care upon its part should have known of its location in time by the exercise of ordinary care to have removed it, and that the wire was the proximate cause of death, defendant is liable. It cannot be claimed there is any evidence that defendant or any of its employees knew of the existence of the wire before the accident. Therefore, unless the evidence tends to show that the wire had been in the location of the accident for a sufficient length of time to charge defendant with constructive notice of its existence, the defendant is not liable. The statement of the witness that the wire "was fastened, I judge, in the ground or on the rail" is insufficient to show that the wire had been in that location for a sufficient length of time to charge defendant with constructive notice thereof.

To say that the evidence is sufficient to allow the jury to find that the wire had been in the location where it was found after the accident

for a period of one hour or one day would be to say that the jury could find the existence of a fact based upon nothing more substantial than a guess.

We are cited to the case of Doyle v. St. L. Company, 31 S. W. (2d) 1010. In that case there was a loop of wire over which plaintiff tripped causing him to fall. "The wire was rusty and old, and was securely embedded in ground that had become solid and smooth, as the result of user and the elements, we may infer. This was evidence that the wire had been there for a sufficient length of time to permit an inference that defendant at least had constructive notice or knowledge of its existence."

In the Doyle case the fact that the wire was securely embedded in ground that had become solid and smooth as the result of user was held to be sufficient to raise an inference that it had been in that location for a sufficient length of time for the defendant to have become aware of its existence. There are no such facts in this case. The witness said that one end of the wire "appeared to be fastened . . . I judge, in the ground or on the rail—I didn't get a change to examine it." It is apparent the witness gave no evidence tending to show that defendant or any of its employees had had opportunity to know of the existence of the wire.

We are also cited to the case of Lock v. Railroad, 219 S. W. 919, in which it is said: "The leaving of the brake beam, therefore, at the point where it was shown to have been left, was a negligent act and bound the company as effectually as if it, as principal, had left it there, and the respondent was not required to show a negligent placing of the brake beam at the point where it was left."

The brake beam was one of the instrumentalities used by the defendant's employees and was placed by them in such a location that injury resulted. Not so in this case. There is no evidence in this case that wire was used by defendant or any of its employees nor that any of them placed the wire in the yards. If there was evidence that defendant or any of its employees placed the wire at the location of injury, a different situation would arise.

Other cases cited in the briefs are in harmony with the holding in the Doyle case, and the holding in the Lock case.

Obviously there was a total failure to prove the pleaded case, and the request for directed verdict should have been granted. The judgment is reversed and the cause remanded. The commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur.