James Dale WILSON, a minor, by his natural guardian and next friend, Nora Wilson, Plaintiff-Respondent.

v.

Floyd WHITE, Defendant-Appellant.

No. 7206.

Springfield Court of Appeals.

Missouri.

Oct. 13, 1954.

Ted M. Henson, Poplar Bluff, for defendant-appellant.

David W. Hill, Charles T. Bloodworth, Jr., Poplar Bluff, for plaintiff-respondent.

STONE, Judge.

Plaintiff, 13 years 5½ months of age at the time, sustained severe and permanently crippling injuries to his left index and middle fingers on April 26, 1952, while mowing the lawn at defendant's farm home with a power lawn mower. Defendant appeals from an adverse judgment of $2,000. The cause having been tried by the court, sitting as a jury, we "review the case upon both the law and the evidence as in suits of an equitable nature", with "due regard * * * to the opportunity of the trial court to judge of the credibility of the witnesses." Section 510.310(4); Scott v. Kempland, Mo., 264 S.W.2d 349, 355(10); Howell v. Reynolds, Mo., 249 S.W.2d 381, 387(13). (All statutory references are to RSMo 1949, V.A.M.S.) No findings of fact or declarations of law were requested or given, so "(a)ll fact issues * * * shall be deemed found in accordance with the result reached." Section 510.310(2); Decker v. Evans, Mo., 221 S.W.2d 127, 130

(4); Maas v. Dreckshage, Mo.App., 244 S.W.2d 397, 403(7).

Plaintiff, who lived with his mother on defendant's farm, was employed at 50¢ per hour to mow defendant's lawn "nearly an acre" in size. The lawn was "bottom" land and had been "filled * * * a little" during the Spring of 1952. At the time of accident, there were "some depressions in it because of the fill"; and, although it looked level, it was "uneven" and had "low and high places in it." Defendant's mower, which plaintiff used, was a "rotary type" power mower with "a gasoline engine * * * on the top part of the mower * * * connected by a shaft to a rotary blade," which revolved "at a tremendous rate of speed" parallel with and close to the ground. A metal shield covered the rotary blade, but there was sufficient clearance in front to permit "the grass to stand up as it comes in contact with the rotary blade." The gasoline tank on top of the motor was filled through a small opening near the front of the tank, which was closed with a screw cap. Although we find no definite evidence to sustain the charge in plaintiff's amended petition that this screw cap "was defective", defendant testified that "if you don't tighten it down good, it will vibrate off." The gasoline motor operated only the rotary blade. "You have to push it (the mower), it is not self-propelled." However, it was alleged in plaintiff's amended petition "that the vibration * * * of the said engine caused the said mower to propel itself forward even though no personal force was applied to the said mower"; and, *plaintiff* adduced evidence that "they will creep forward on you" and that "they go forward an inch or two and on rough ground they will go further than that because of the tremendous speed of this rotary blade." And, when *defendant* was asked on cross-examination, "have you noticed it (the mower) vibrating where you have got a depression and a little hilly ground, you have noticed it move forward * * * haven't you?", he replied, "I have seen it do that, it will do that."

*Plaintiff* testified that, on the date of accident, defendant "got the lawn mower out

and put the gas in it and started it up and * * * pushed it fifteen or twenty foot and set the gas and handed it to me and I started mowing his lawn"; that defendant showed him "how to stop the mower"; but, that defendant gave him no other instructions about handling the mower and told him nothing about the dangers incident to operation or about the inherent characteristics or tendencies of the machine. *Defendant* said that "I told him (plaintiff) to be careful with it and to not put his hands or feet underneath the mower, that the propellors would cut him," but defendant frankly admitted that he had *not* told plaintiff about the tendency of the mower to "creep" forward with the motor running or "about this gas cap having a tendency to vibrate and come off." After using the mower "about thirty, maybe forty-five minutes," plaintiff refilled the gasoline tank and then replaced the screw cap on the tank. After mowing some fifteen or twenty minutes more, he saw the cap vibrating and stopped the mower on "uneven" ground. The gasoline cap fell in front of the mower "about two inches from it," plaintiff "walked around to the right" and reached down with his left hand to pick up the cap, and the mower "moved forward into my hand." Plaintiff insisted that, before attempting to pick up the cap, he had stopped the mower "dead still" (although he did not "kill" the motor or change the speed of it), and that he did not put his hand under the mower at any time.

At the time of accident, plaintiff was finishing the eighth grade in school. His attending physician expressed the opinion that plaintiff was a "pretty bright boy"—"above average in mentality" for his age. Prior to the accident, plaintiff had done other work for defendant, "maybe between thirty and fifty hours," described by defendant as "farm work and picking up sprouts and things on new ground." When he was "about 10," plaintiff had started to drive farm tractors; and, after driving "for a year or two," he had begun "working with a tractor" and farm machinery, such as plows, discs, harrows, etc. Upon trial, plaintiff insisted that he had not operated a power

lawn mower prior to the date of accident, although he readily admitted that he had cut weeds with a mowing blade on "a little garden tractor." Defendant testified that he was "under the impression that James (plaintiff) told me that he operated a mower like that on the school yard"; and, in a statement signed by plaintiff on April 28, 1952, two days after the accident and while he was still in the hospital, it appears that "I used this type of mower about one whole summer last year (1951)"—"I had used the same type mower before at school but this was the first time I had used this one." In the same signed statement, plaintiff had said "Mr. White (defendant) had told me to be careful using the mower." However, this signed statement does not show that, prior to the date of accident, plaintiff had operated any power lawn mower having the same inherent characteristics or tendencies as defendant's mower, or that defendant did more than warn plaintiff, in very general language, "to be careful using the mower."

■ Defendant's complaints on appeal are that his motions for a directed verdict at the close of plaintiff's case and at the close of all of the evidence should have been sustained, and that plaintiff's signed statement of April 28, 1952, was erroneously excluded from evidence. The alleged error in overruling defendant's motion for a directed verdict at the close of plaintiff's case was waived when defendant subsequently introduced evidence on the merits [Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 607(12); Adams v. Kansas City, Mo.App., 266 S.W.2d 771, 772 (1); Baird v. Ellsworth Realty Co., Mo. App., 265 S.W.2d 770, 771(3)], and we here consider only the motion for a directed verdict at the close of all of the evidence.

■ The pleaded negligence with which defendant is charged, and upon which plaintiff relies, is in "failing to inform and warn him (plaintiff) of the dangers in operating the said motor (and) failing to warn or instruct him as to the dangers inherent in the said mower * * * when he (defendant) knew or should have known that because of his (plaintiff's) youth and inexpe-

rience * * * he was not qualified to control or operate the said power mower * * * and knew that the plaintiff was not aware of the hazards incident to the operation of the said power mower." And, the reported cases leave no room for doubt but that a master has the duty to warn a youthful and inexperienced servant of danger incident to work he is required to do or operation of a machine he is directed to use, where by reason of such youth and inexperience the servant is not aware of and does not appreciate the danger and risk [1].

It may be that, as defendant contends, he should not have anticipated that plaintiff would have been injured at the exact time and place, or in the precise manner, that he was. But, while defendant "was not bound to anticipate a condition or an occurrence that a reasonably prudent person could not foresee or guard against, 'the fact that the precise manner in which the injury occurred was not foreseeable would not be a defense, if from (his) failure to warn * * * the defendant might reasonably have anticipated that injury of some kind would result.' " Miller v. Brunson Const. Co., Mo., 250 S.W.2d 958, 960 (4). "While the likelihood of a future happening is the test of a duty to anticipate, this does not mean the chances in favor of the happening must exceed those against it. The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it." Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W. 2d 52, 55(6). If defendant's failure to warn plaintiff concerning operating dangers and inherent characteristics of the mower, which were known to defendant but which plaintiff did not know and appreciate, was a substantial factor in bringing about harm

to plaintiff, the fact that defendant did not foresee the manner in which such harm subsequently occurred or the extent thereof does not prevent him from being liable. Mrazek v. Terminal R. R. Ass'n of St. Louis, 341 Mo. 1054, 111 S.W.2d 26, 29–30 (6, 7); State ex rel. Emery, Bird, Thayer Dry Goods Co. v. Shain, 348 Mo. 650, 154 S.W.2d 775, 777(5); Restatement of Law of Torts, Section 435, p. 1173.

Defendant employed plaintiff, a youth 13 years 5½ months of age, to operate a power mower with a rotary blade revolving "at a tremendous rate of speed"—traveling "so fast that you can't even see it if you are looking at the edge of it"—which obviously was capable of inflicting, and in this instance actually did inflict, severe personal injuries. That an operator might, through carelessness or inadvertence, get a hand or foot within range of the rotary blade was recognized by defendant himself, who said that he gave a general warning to plaintiff "to be careful with it and to not put his hands or feet underneath the mower, that the propellors would cut him." But, defendant imparted no information or warning about the inherent characteristics or tendencies of the mower, i. e., its tendency, particularly on rough ground, to "creep" forward with the motor running, and the tendency of the screw cap to "vibrate off"—operating characteristics of the mower which were known to defendant but, as plaintiff insists without contradiction in the record, were unknown to him, and which subsequently resulted in injury to plaintiff. Conceding that defendant might have had no reason to have anticipated that the screw cap on the gas tank would "vibrate off" on the occasion under consideration and thus conceding that defendant might have had no duty to have informed or warned plaintiff of this particular characteristic or ten-

---

1. Evans v. General Explosives Co., 293 Mo. 364, 239 S.W. 487, 491(4, 5); Czernicke v. Ehrlich, 212 Mo. 386, 111 S.W. 14, 17(3, 4); Dowling v. Gerard B. Allen & Co., 74 Mo. 13, 16–18(1); Smiley v. Jessup, Mo.App., 282 S.W. 110, 112(3); Benjamin v. C. Hager & Sons Hinge Mfg. Co., Mo.App., 273 S.W. 754, 757(3); Bulson v. International Shoe Co., 191 Mo.App. 128, 177 S.W. 1084, 1086(2); Warnke v. A. Leschen & Sons Rope Co., 186 Mo.App. 30, 171 S.W. 643, 647(3), 648(8); Saller v. Friedman Bros. Shoe Co., 130 Mo.App. 712, 109 S.W. 794, 800(11); Vanesler v. Moser Cigar & Paper Box Co., 108 Mo.App. 621, 84 S.W. 201, 203(2); 56 C.J.S., Master and Servant, § 306(a), p. 1064.

dency of the mower, nevertheless defendant might well have foreseen or anticipated that, in the course of mowing his lawn "nearly an acre" in size, which had been "filled * * * a little," had "some depressions in it," and was "uneven," plaintiff might have found it necessary or advisable to stop the mower on rough ground, walk around in front of it, and remove from its path some object or objects other than the screw cap, for example sticks, limbs or rocks. So, the trier of fact reasonably might have found that defendant should have informed and warned plaintiff of the tendency of the mower, particularly on rough ground, to "creep" forward with the motor running.

 Negligence, which has been defined as "the failure to exercise the degree of care required by the circumstances" [Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485, 489(1); Hinds v. City of Hannibal, Mo., 212 S.W.2d 401, 403(3)] is ordinarily a question for the trier of fact; and, " '(i)t is always so when the evidence on material points is conflicting, or where, the facts being undisputed, different minds might reasonably draw different conclusions from them'" [Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10, 13(1)]. Whether defendant in the instant case was guilty of negligence in failing to warn plaintiff of the tendency of the mower to "creep" forward with the motor running and whether such negligence was the proximate cause of plaintiff's injury were, we think, issues for determination by the trier of fact, in this instance the trial judge.

 For that matter, defendant's primary contention upon appeal is that his motion for a directed verdict should have been sustained *not* because defendant was wholly free from negligence *but rather* because "plaintiff was guilty of negligence as a matter of law." The adjudicated cases demonstrate that, under certain circumstances, minors may be found guilty of contributory negligence as a matter of law[2]. However, it is clear " 'that the same standards do not apply in the case of an infant of tender years and an adult, so far as the doctrine of contributory negligence is concerned. For no court can hold that childhood and manhood are bound to observe the same degree of diligence.' " Jackson v. Butler, 249 Mo. 342, 155 S.W. 1071, 1079 (16). In short, a child should be judged as a child and not as an adult[3]. It has been uniformly held that the care and caution required of a minor, who is of sufficient age to be chargeable with contributory negligence, is that ordinarily exercised by others of the same age, experience and capacity under the same or similar circumstances[4]. "Knowledge and appreciation of the danger and risk of injury, actual or imputed, is essential in order that a child may be

2. Boesel v. Wells Fargo & Co., 260 Mo. 463, 169 S.W. 110, 113–114(3); McGee v. Wabash R. Co., 214 Mo. 530, 114 S.W. 33, 37(15); Spillane v. Missouri Pac. Ry. Co., 135 Mo. 414, 37 S.W. 198, 201; Van Alst v. Kansas City, 239 Mo.App. 346, 186 S.W.2d 762, 766(5); Turner v. City of Moberly, 224 Mo.App. 683, 26 S.W.2d 997, 999(7); Battles v. United Rys. Co. of St. Louis, 178 Mo.App. 596, 161 S.W. 614, 623–624(14–15); Henry v. Missouri Pac. Ry. Co., 141 Mo.App. 351, 125 S.W. 794(2); Stegmann v. Gerber, 146 Mo. App. 104, 123 S.W. 1041, 1045(3).

3. Moeller v. United Rys. Co., 242 Mo. 721, 147 S.W. 1009, 1011(4); Czernicke v. Ehrlich, supra, 111 S.W. loc. cit. 17; Doran v. Kansas City, Mo.App., 237 S.W.2d 907, 912; Lottes v. Pessina, Mo. App., 174 S.W.2d 893, 899(9); Dorlac v. Bueneman, Mo.App., 129 S.W.2d 108, 110; Erxleben v. Kaster, Mo.App., 21 S. W.2d 195, 198(12); Smiley v. Jessup, supra, 282 S.W. loc. cit. 112(6); Saller v. Friedman Bros. Shoe Co., supra, 109 S.W. loc. cit. 797.

4. Warren v. Kansas City, Mo., 258 S.W. 2d 681, 683(3); Beebe v. Kansas City, 327 Mo. 67, 34 S.W.2d 57, 58(5); Goodwin v. Eugas, 290 Mo. 673, 236 S.W. 50, 53(2); Jackson v. Butler, 249 Mo. 342, 155 S.W. 1071, 1079(16); Spillane v. Missouri Pac. Ry. Co., supra, 37 S.W. loc. cit. 201(2); Doran v. Kansas City, supra, 237 S.W.2d loc. cit. 911–912(3); Dorlac v. Bueneman, supra, 129 S.W.2d loc. cit. 110(2); Turner v. City of Moberly, supra, 26 S.W.2d loc. cit. 998(2); annotations, 174 A.L.R. 1080, 1084, 1134–1145; annotations 107 A.L.R. 4.

guilty of contributory negligence. Mere knowledge that injury might result, without appreciation of the risk of injury to which his conduct exposed him, is not sufficient." Turner v. City of Moberly, 224 Mo.App. 683, 26 S.W.2d 997, 998. For the law recognizes that thoughtless conduct, impulsive action and immature judgment are concomitants of youth; and that, although "(a) boy may have all the knowledge of an adult respecting the dangers which will attend a particular act, * * * at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person." Burger v. Missouri Pac. R. Co., 112 Mo. 238, 20 S.W. 439, 441; Holmes v. Missouri Pac. Ry. Co., 190 Mo. 98, 88 S.W. 623, 625.

Since "(t)here is no fixed rule of law by which to gauge, or scale by which to nicely weigh, the acts of a minor to determine if he is guilty of contributory negligence" [Jackson v. Butler, supra, 155 S.W. loc.cit. 1079], and since, in each case, not only the age of the minor but also "the peculiar circumstances of the particular case, the knowledge and experience of the child in reference to those circumstances, and his capacity to appreciate the danger" must be taken into consideration [Moeller v. United Rys. Co., 242 Mo. 721, 147 S.W. 1009, 1012(6)], the question as to whether a minor servant has been guilty of contributory negligence, i.e., whether such servant knew and appreciated the dangers of his employment and the risk of injury, is usually for the trier of fact.[5] That a plaintiff was guilty of contributory negligence can be declared by the court, as a matter of law, only where reasonable minds cannot differ as to plaintiff's negligence[6]; and, "(t)he whole evidence and all legitimate inferences deducible therefrom are viewed in the light most favorable to plaintiff and taken as true while the evidence and inferences favorable to defendant are disregarded in ruling the issue of contributory negligence as a matter of law." Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, 500(4); and cases there cited. We have examined carefully the cases cited by defendant on this point. Without detailed discussion of them, it will suffice to point out that, in three of them[7], injuries to mature, adult employees were involved; that, in three of them[8], the minor was injured or killed by proceeding voluntarily and deliberately after having been warned or having actual knowledge of manifest risk and imminent danger (see Hild v. St. Louis Car Co., Mo.App., 259 S.W. 838, 840); and that, in the other two cases[9], the court found not only that the injured minor had been negligent *but also that the defendant had not been negligent*. None of the cases cited by defendant militate against the conclusion reached herein. From the record in

5. Beebe v. Kansas City, supra, 34 S.W.2d loc. cit. 58; Jackson v. Butler, supra, 155 S.W. loc. cit. 1080(18); Evans v. General Explosives Co., supra, 239 S.W. loc. cit. 491(5); Burger v. Missouri Pac. R. Co., 112 Mo. 238, 20 S.W. 439, 441; Van Alst v. Kansas City, supra, 186 S.W. 2d loc. cit. 765(4); Lottes v. Pessina, supra, 174 S.W.2d loc. cit. 899(12); Smiley v. Jessup, supra, 282 S.W. loc. cit. 112(5); Benjamin v. C. Hager & Sons Hinge Mfg. Co., supra, 273 S.W. loc. cit. 757(4); Hild v. St. Louis Car Co., Mo.App., 259 S.W. 838, 839–840(1); Saller v. Friedman Bros. Shoe Co., supra, 109 S.W. loc. cit. 797–798(4).

6. Johnson v. Lee Way Motor Freight, Mo., 261 S.W.2d 95, 96(1); Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 812(6); Jackson v. Butler, supra, 155 S.W. loc. cit. 1080; Moeller v. United Rys. Co., supra, 147 S.W. loc. cit. 1012(5); O'Mellia v. Kansas City, St. J. & C. B. R. Co., 115 Mo. 205, 221, 21 S.W. 503, 507; Fanning v. Hines, 206 Mo.App. 118, 222 S.W. 1038, 1040(3).

7. Chisenall v. Thompson, 363 Mo. 538, 252 S.W.2d 335; Penny v. Southeastern Express Co., Mo.App., 35 S.W.2d 940; Davis v. Brown-Cloughly Drug Co., Mo. App., 14 S.W.2d 533.

8. Boesel v. Wells Fargo & Co., supra; Turner v. City of Moberly, supra; Henry v. Missouri Pac. Ry. Co., supra.

9. Pietraschke v. Pollnow, Mo.App., 147 S.W.2d 167; Hight v. American Bakery Co., 168 Mo.App. 431, 151 S.W. 776.

the instant case, we cannot find that, when plaintiff undertook to pick up the screw cap in front of the mower, he knew and appreciated the danger that, on the "uneven" ground on which he had stopped it, the mower might "creep" forward and bring his hand within range of the rotary blade; and thus, with the foregoing basic and controlling principles in mind, we cannot say that plaintiff was guilty of contributory negligence as a matter of law. The court did not err in overruling defendant's motion for a directed verdict at the close of all of the evidence.

In our view of the case, we need not extend this opinion by discussion of defendant's complaint that plaintiff's signed statement of April 28, 1952, was improperly excluded from evidence. For, the statement in question is included in the transcript on appeal, and we have considered it in our review of the case, as we are permitted to do. Section 510.310(4). The only portions of this signed statement, to which defendant's counsel referred in trial of the case, or which differed from plaintiff's oral testimony, have been hereinbefore quoted. Even if plaintiff's signed statement were accepted literally and in its entirety, it would not establish that plaintiff was guilty of contributory negligence as a matter of law and would not change materially or in any important respect the factual situation presented by the oral testimony. We are enjoined by statute that "(t)he judgment shall not be set aside unless clearly erroneous" [Section 510.310(4); Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546, 549(1); Truck Leasing Corp. v. Esquire Laundry & Dry Cleaning Co., Mo.App., 252 S.W.2d 108, 109(1)], and that "(u)nless justice requires otherwise the court shall dispose finally of the case on appeal" [Section 512.160(3)]. Under the circumstances of the instant jury-waived case, exclusion of plaintiff's signed statement does not constitute reversible error, where cross-examination of plaintiff by defendant's counsel was in no wise limited or restricted by exclusion of the statement and where, on appeal, we have the state-

ment before us and have considered it as part of the evidence.

The trier of fact, in this instance the trial judge, having had plaintiff before him, was in better position than we are, "from his (plaintiff's) manner on the stand of testifying, from his appearance, intelligence, and other facts, to say whether, as to the danger to which he exposed himself, he shall be judged as a child or as a man full grown." Jackson v. Butler, supra, 155 S.W. loc.cit. 1081. No question having been raised by defendant concerning the amount of the judgment, and being mindful that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses" [Section 510.-310(4)], we have concluded, after however independent examination of the record which confirms the propriety of the trial court's finding, that the judgment should be affirmed. It is so ordered.

McDOWELL, P. J., concurs.