Joseph SCHULTE et al., Plaintiffs-Appellants-Respondents,

v.

George GRAFF et al., Defendants-Respondents,
Mary Lou Becker et al., Defendants-Appellants.

Nos. 34058, 34059.

Missouri Court of Appeals,
St. Louis District.

April 25, 1972.

Motion for Partial Rehearing and Modification or for Transfer to Supreme Court Denied May 18, 1972.

Application to Transfer Denied July 17, 1972.

Joseph H. Mueller, Robert C. Ely, St. Louis, for defendants-respondents.

George F. Gunn, Jr., County Counselor, Don R. Williams, Assoc. County Counselor, Clayton, for defendants-appellants.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Donald W. Bird, Francis M. Oates, St. Louis, for plaintiffs-respondents.

DOWD, Judge.

This is an action to recover damages for the wrongful death by drowning of plaintiffs' seven year old daughter, Barbara. At the trial below directed verdicts were granted by the trial judge in favor of the defendants Graff, Wietecter, and Bimes. The jury returned a verdict in favor of the plaintiffs against the defendants, Mary Becker and Jacqueline Certa in the amount of $5,000. These two defendants appeal the denial of their motions for a directed verdict and also claim error in the giving of two instructions to the jury. The plaintiffs appeal from the directed verdict in favor of the other three defendants.

The facts surrounding the death of Barbara Schulte, adduced from the testimony, are as follows. The deceased was a participant in a summer recreation program run by the St. Louis County Department of Parks and Recreation. The program included swimming lessons. These lessons were conducted by employees of the Department of Parks and Recreation at the North Shore Swimming Pool, which was owned by the defendant Graff. It was a private, membership pool. The County had worked out an arrangement with Graff

whereby each of the children would pay twenty-five cents entrance charge. Graff stated that "there was no profit in it," and that he considered it a community service. The lessons were conducted twice a week for eight weeks for the Larimore Park Group. Barbara was a member of this group.

The North Shore Pool is about fifty feet wide by fifty feet long at the deep end. There is a rope separating the deep end from the shallow water. There is also a rope around the perimeter of the pool about five or six feet from the edge. The depth of the water ranges from about two feet at the shallow end sloping to eight to ten feet at the deep end.

For instruction purposes, the children were divided into groups or stations according to their swimming ability. Barbara was in station 1, for non-swimmers. Each station was composed of about five children and an instructor. On the last day of the program, August 10, 1967 the children were allowed to play water games, such as diving for pennies, instead of the usual lessons. For the purpose of playing these games, stations 1–3 were intermingled.

On the day of the tragedy, there were some 15 or 16 lifeguards and instructors stationed in and alongside the pool. The lifeguards and instructors were employed by St. Louis County and were certified by the American Red Cross as to their proficiency in life saving and swimming instruction. These certifications were checked by the County Parks Department. There were two lifeguard stands on either side of the deep water area, but these were customarily not used except during periods of free swimming. At some time during the game period, Barbara and her sister Julie got out of the pool and Julie went into the restroom. Julie left Barbara standing near the deep-water end of the pool, and told her to stay there until she returned and not to get in the pool. She returned about five minutes later, and saw Barbara being given mouth to mouth resuscitation.

Thus, it was some time during this five minute period that Barbara was discovered at the bottom of the pool in eight to ten feet of water by two boys who were diving from the two diving boards. After ascertaining that there was, in fact, a little girl lying at the bottom of the pool, the boys called to the nearest lifeguard, Norm Thrall, who was the son of the defendant Becker. There was testimony that it took about a minute of conversation to attract Thrall's attention, and then convince him they were telling the truth. Thrall climbed into the lifeguard stand to take a look, since the glare from the sun prevented him from seeing all the way to the bottom from alongside the pool. He then dived in and brought Barbara up. There was testimony that approximately two or three minutes elapsed between the time Barbara was first spotted and the time she was pulled out of the pool. Mouth to mouth resuscitation was immediately begun. After about ten minutes the child's coloring returned and she started to breathe. However, the coloring regressed before the ambulance arrived with an inhalator, approximately twenty minutes later, and Barbara subsequently was pronounced dead on arrival at City Hospital. An inhalator had been continuously used on the child all the way to the hospital. There was testimony by the plaintiff's family doctor that an inhalator was more efficient than mouth to mouth resuscitation, and had this equipment been available immediately, it was possible that Barbara would have lived.

At the trial, the plaintiffs called each defendant as a witness and at the close of plaintiffs' case, the motions herein appealed from were made. We will consider each defendant's position in turn.

The defendant Wietecter was the Assistant Recreation Supervisor for the St. Louis County Department of Parks and Recreation. At the time he took up this position, June 1, 1967, the summer program

had already been set up by the Recreation Supervisor Phillips. Wietecter's job was to exercise general supervision of the activities planned, and he had inspected the pool with the defendant Becker before the program started. He testified that he had no training in swimming procedures and was not qualified to run a swimming program, but only to administer a general recreation program. He exercised no control over the pool activities and had not hired any of the pool personnel, although they were provided by his department. He testified that the pool furnished all the safety equipment and there was no written departmental policy regarding the type of equipment required. Furthermore, his position would not enable him to set or change such a policy, even had there been one.

The defendant Bimes was the director of Larimore Playground and was employed by the County. He and his staff were not trained in water safety, but one or two of them were usually in the pool assisting the instructors. None of his staff served as lifeguards, but did assist generally in the area around the pool. He had never inquired about safety equipment, but had observed so-called shepherd's hooks and ring buoys. He himself usually watched the pool activities, but always wore street clothes. Since Wietecter and Bimes are in similar positions, the motions of these two defendants will be considered together.

In general, a verdict may be directed for a defendant only when the facts in evidence and the legitimate inferences drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Fain v. Margo Equipment Co., Mo.App., 366 S.W.2d 14; Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 149 S.W.2d 792. We must therefore, view the evidence in the light most favorable to the plaintiffs. Hastings v. Coppage, Mo., 411 S.W.2d 232, 235.

■ The testimony of Wietecter and Bimes was part of the plaintiffs' case.

The evidence does not show that any authority or duty existed on the part of these defendants to guard the decedent while she was participating in the swimming program. On the contrary, the record clearly shows that neither defendant was qualified to assume such authority or duty, nor did the positions held by them impute any such authority or duty. There is no evidence that they did not exercise reasonable supervisory care in their respective capacities. No negligence is alleged against the defendant Bimes's subordinates. The defendant Wietecter did not select or hire his subordinates, and in any case, was not qualified to supervise the safety procedures of the pool personnel, both by his own admission and by corroborating testimony of the defendant Becker. The general supervisory duties of these two defendants did not involve the swimming pool or its use. There is thus no respondeat superior, between these defendants and those personnel whose duty it was to guard the children at the pool, Smith v. Consolidated School District No. 2., Mo., 408 S.W.2d 50, even if it were shown that the said pool personnel were in fact negligent. We will consider this further in connection with the discussion, infra, of the defendants Becker and Certa. There was thus no duty to act, and no act or omission on the part of these defendants which would reasonably be said to be the proximate cause of the drowning. There being no theory under which plaintiffs could have recovered from these defendants, a directed verdict was properly granted.

The defendant Graff, as stated, was the owner and operator of the pool, which is located in the City of St. Louis. Under agreement with St. Louis County Department of Parks and Recreation, his pool was used at specified times for the Department's summer program of swimming lessons. He testified that the City Health Department regularly checked the pool two or three times a week, and that the only safety equipment required by the Department was provided, to wit, shepherd's hooks and ring buoys. He testified that he

knew of no pool in the area which had an inhalator on the premises, although he admitted he had never looked or specifically inquired. During the County swimming program his guards were on the premises; however, the County provided its own lifeguards and instructors. Norm Thrall was one of those employed by the County. Graff admitted that no guards were in the two stands during the periods of swimming instruction, but said they were better able to watch the children from the side. During free swimming periods, the guard towers were always used.

An employee of the Chain of Rocks Pool testified that there had been a mechanical resuscitator kept at that pool since 1959. This testimony was admitted only as against the defendant Graff.

 The plaintiffs assert that Graff owed Barbara Schulte a duty to provide adequate safety appliances and rescue personnel at the pool. We agree. The duty of owners or proprietors of recreational facilities such as lakes or swimming pools is to exercise ordinary care to make the premises reasonably safe for visitors. McFarland v. Grau, Mo.App., 305 S.W.2d 91 [1]. However, owners of swimming pools are not insurers of safety of patrons, but are bound to use reasonable care. Boll v. Spring Lake Park, Inc., Mo., 358 S.W.2d 859.

 Specifically, it is claimed that Graff was negligent in not providing an inhalator at the pool. However, in plaintiffs' petition no ordinance is pleaded, nor any custom and usage, which could lay the foundation for proof which would allow the jury to conclude that Graff had a duty to provide an inhalator as part of the required safety appliances. The only evidence in the record is that Graff's pool did not have this device and one pool in the area did. The mere assertion that Graff should have provided an inhalator is not sufficient for a jury to reasonably infer a legal duty.

The conclusion is, therefore, inescapable that Graff was not shown to have a duty as owner and operator of the pool to provide an inhalator. Nor was it shown that the presence of such a device was customary or required. Its absence, therefore, did not indicate any negligence on the part of this defendant.

Furthermore, the evidence shows that at the time of the accident there were at least fifteen qualified lifeguards and instructors stationed in and around the pool. The lifeguards were certified by the American Red Cross for their proficiency. No evidence was introduced which tended to show that the lifeguard force was inadequate or unqualified. If the allegations against Graff had been allowed to be decided by the jury, the decision would necessarily have involved guesswork, conjecture and speculation, since there was no evidence on which the jury could reasonably have found him negligent. This is clearly improper and so a directed verdict was properly granted. Akers v. Lever Bros. Co., Mo., 432 S.W.2d 200 [4].

As to the defendants Becker and Certa, we find it unnecessary to discuss the issue raised by them of improper jury instructions, since we conclude that their motions for directed verdicts should also have been granted.

If defendant Graff had the duty to exercise ordinary care to make the premises reasonably safe for visitors, McFarland v. Grau, supra, then defendants Becker and Certa can, at the most, be said to have a similar duty in their capacities as supervisory personnel at the pool. None of these defendants is an insurer. Boll v. Spring Lake Park, supra, [1].

Defendant Becker was the director of the swimming program at the pool and had held this position for six years. She had a "W.S.I." (water safety instructor) which is the highest degree of proficiency recognized by the Red Cross. Defendant Certa was her assistant. Defendant Becker had direct supervision of the lifeguard staff

and the instructors, and had originally assigned them their duties and stations. She had left the pool shortly before the accident, putting defendant Certa in charge. Defendant Certa told the lifeguards to take up their stations, but did not "place" them specifically, since they were customarily assigned to a regular spot. Becker's testimony was that no guards were placed in the two stands because there was no free swimming that day. Lifeguard Thrall testified that there were 100–150 children in the pool area, and that at the time of the accident all the guards were in position around the pool.

■ We fail to see any evidence of negligence in the preceding testimony. The evidence shows that all the lifeguards were qualified for their positions. The undisputed testimony was that the guards could better watch the children from the poolside than from the guard towers while the children were in their supervised groups. The testimony was also undisputed that there was no free swimming that day, only an intermingling of stations 1–3 for the purpose of playing games. Since stations 1–3 were composed of about fifteen children in non-swimmer and beginning swimmer categories, we assume that they were in the shallow end of the pool. Only two older boys were in the deep water.

There is absolutely no evidence to suggest that had there been a lifeguard in the stand, Barbara would not have drowned, since no one saw her enter the water and no one knows how she came into peril. In the case of Swan v. Riverside Bathing Beach Co., 132 Kan. 61, 294 P. 902, plaintiffs alleged that defendant was negligent because the lifeguards were not stationed in the best places to observe what was happening in the pool. The Court held that simply because something occurred which the lifeguards did not see or hear would not establish negligence, since there were one hundred or more patrons in the pool who evidently did not see or hear anything indicating that decedent was in distress or danger.

Similarly, this court in McFarland v. Grau, supra, in a case involving the drowning of a 14 year old boy in a lake which was operated by the defendant for recreational and swimming purposes analyzed numerous cases throughout the country on drownings.[1] In *McFarland* the court stated at l. c. 100 of 305 S.W.2d: "* * * In those cases there was no evidence to indicate the circumstances surrounding the death and how the decedent happened to drown. The body of the deceased was found in the water and there was no evidence that the deceased was in difficulty or needed assistance. In other words the evidence showed that the presence of lifeguards and rescue equipment[2] would in no way have saved the life of the decedent. No one was aware of the need of assistance. * * *" Here, as said, there was no evidence introduced which showed that the lifeguard force was inadequate or unqualified.

The defendant Becker testified that the only safety equipment she required was shepherd's hooks and ring buoys. As we discussed, supra with regard to the defendant Graff, there was no showing that it was the duty of defendants Becker or Certa to require an inhalator on the premises, whether by way of ordinance or by the standard of custom and usage in the area.

■ The mere fact of an occurrence, unfortunate though it may be, is not sufficient to impose liability on those who owed a duty of care to the subject of the occurrence. Absent a showing of negligence, and absent a showing that the negligence

---

1. McFarland v. Grau, supra, was cited and relied upon by most of the parties to this appeal.

2. Rescue equipment has been discussed in this opinion.

**602**

was a proximate cause of the occurrence, no liability will arise. In this case, no one could explain what happened to Barbara, how she came into a position of peril in deep water from a position of safety alongside the pool. It would be pure conjecture to conclude that it must have been due to someone's negligence. A jury may not be given such a task. Akers v. Lever Bros. Co., supra, [4].

■ The fact that testimony showed that the lifeguard Thrall was talking to someone at the time Barbara was discovered, and that he was not immediately convinced of the need for aid, does not, in and of itself, show that he was acting negligently. However, even assuming arguendo that Thrall, or any other lifeguard was negligent, defendants Becker and Certa would not be liable under *respondeat superior* as they were not his employers (lifeguards were employed by the County) and there is no evidence that the conduct of a lifeguard was the result of their failure to properly instruct or supervise him.

We have examined all of plaintiffs' cited cases, and numerous other cases, and we do not find them persuasive on the submissibility of plaintiffs' case. Considering all of plaintiffs' evidence from a viewpoint most favorable to plaintiffs and giving plaintiffs the benefit of every reasonable favorable inference which the evidence tends to support (Austin v. Western Auto Supply Co., Mo., 421 S.W.2d 203, 204) we do not believe that plaintiffs made a submissible case as to any defendant.

The trial court should have also sustained defendants' Becker and Certa motions for a directed verdict. Therefore the judgment against defendants Becker and Certa is reversed and the judgment in favor of the defendants Graff, Wietecter and Bimes is affirmed. It is so ordered.

BRADY, C. J., and SMITH, SIMEONE and WEIER, JJ., concur.