Donna Marie CARTER, Respondent,

v.

BOYS' CLUB OF GREATER KANSAS
CITY, Appellant.

Nos. KCD 27998, KCD 27999.

Missouri Court of Appeals,
Kansas City District.

May 31, 1977.

William R. Fish, Kenneth O. Smith, Knipmeyer, McCann, Fish & Smith, Kansas City, for appellant.

Thaine Q. Blumer, Kansas City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

Donna Marie Carter (incorrectly named in the briefs as Donna T. Carter), the mother of one Garen Brown (Garen) brought this suit for damages for his death by drowning on November 20, 1971 in a swimming pool operated by the Boys' Club of Greater Kansas City (Club). The respondent will be hereafter referred to as plaintiff.

A jury trial resulted in a verdict for the Club and thereafter the trial court sustained plaintiff's motion for a new trial upon the sole ground that Instruction No. 4 given to the jury was erroneous. A timely appeal was taken by the Club from such judgment.

Club's first point or assignment of error on appeal is that the trial court erred in overruling its motion for a directed verdict at the close of all the evidence for the reasons that there was no substantial evidence that the Club's negligence, if any, was the proximate cause of Garen's death and that there was substantial evidence that Garen was guilty of contributory negligence as a matter of law. Of course, if Club is correct in this position, there is no necessity to reach its second point, that the court erred in sustaining the plaintiff's motion for a new trial upon the single specified ground, because of error in Instruction No. 4.

In determining the Club's first point, it is not only necessary to review the evidence but, in so doing, to keep in mind the well-defined limitations placed upon the scope of appellate review in assessing the validity of such an assignment of error.

A trial court may direct a verdict for the defendant only when the facts in evidence and the legitimate inferences to be drawn therefrom are so strongly against the plaintiff "as to leave no room for reasonable minds to differ." *Trower v. Missouri-Kansas-Texas R. Co.*, 347 Mo. 900, 149

S.W.2d 792, 796[3] (1941); *Hastings v. Coppage*, 411 S.W.2d 232, 235[2] (Mo.1967); *Fain v. Margo Equipment Company*, 366 S.W.2d 14, 15[1] (Mo.App.1963); *Schulte v. Graff*, 481 S.W.2d 596, 599 (Mo.App.1972).

■ The appellate court must take plaintiff's evidence as true and give her the benefit of all favorable evidence and every reasonable inference to be drawn from all the evidence. The defendant's evidence will be disregarded except so far as it may aid plaintiff's case. *Neal v. Kansas City Public Service Co.*, 353 Mo. 779, 184 S.W.2d 441, 442[1, 2] (1944); *Walker v. Niemeyer*, 386 S.W.2d 87, 89[1] (Mo.1965). The same principles are applicable on appellate review of whether or not the plaintiff's decedent, Garen, was guilty of contributory negligence as a matter of law. *Goldbaum v. James Mulligan Printing and Pub. Co.*, 347 Mo. 844, 149 S.W.2d 348, 351[2] (Mo.1941); *Walker v. Niemeyer*, supra, at l.c. 89[2].

■ When viewed within the confines of these limiting principles the evidence showed the following facts:

Garen Brown at the time of his death was twelve years of age and could not swim. He was in 6th grade at school, which he regularly attended, and was in excellent physical condition. He lived with his mother, the plaintiff, about a block and a half from the Club's location. About two weeks before his death, the plaintiff had filed an application for membership for Garen in the Club in order that he be taught the fundamentals of swimming. At about 5:00 p. m. on the date of his death, Garen left his home to attend a "free swim" session at the Club's pool. It was to be his first swimming session at the Club. About an hour after his departure from home, the plaintiff received a call that an accident had happened at the Club. She and her husband hurried to the Club where she found Garen "stretched out" and receiving mouth to mouth resuscitation, which proved fruitless. Garen's death was caused by drowning.

The Club swimming pool is an "Olympic Size" pool 25 yards in length; three feet deep at the shallow end and nine feet deep at the other end. It was divided by rope markers into three sections: one, at the shallow end for nonswimmers; two, middle, where the kids swam "back and forth"; and, third, the deep end for rated swimmers, which included diving facilities.

While the record is not entirely clear as to the rules and control regulations governing the use of the pool and the restrictions and instructional guidelines controlling the activities of various classifications of swimmers, certain matters of evidentiary weight are apparent. Before the commencement of any swimming session, the boys are placed in groups in bleachers according to their abilities. They are told that the nonswimmers are not allowed in the deep end of the pool and there was to be "no running, no fighting, and no going into the deep end" when games were in progress in the shallow end. Further, at the swimming sessions there were usually two instructors in attendance. One would be in the water with the boys and one on the side out of the pool for surveillance.

On the evening of Garen's death, there were a total of ten to twelve boys attending the "free swim" and it can be inferred from the record that this was a relatively small number as compared to the usual class. All or most of them were apparently non-rated or nonswimmers.

The circumstances leading to Garen's death are somewhat obscure since no one observed him in any difficulty or heard any calls for help.

Freddie Green, an eleven year old rated swimmer who was permitted use of the deep water, testified for the plaintiff. He stated that he and Garen were in a corner of the pool at the deep end; Garen was sort of gliding "back and forth" in the corner. One of the instructors, Johansen, came to where the two boys were and told them if they wanted to play "war ball" to get into the shallow end, and if they didn't want to play "we had to get out" of the water. Freddie left the water and went to the shallow end but, "I don't know what he (Garen) did." A few minutes later, Freddie saw a bunch of people crowded around the

corner of the pool where he and Garen had been. He went to this corner and observed Garen "down at the bottom of the corner". Before the free swim session, Freddie stated that the boys sat down in the bleachers and the lifeguard-instructors explained the rules, such as, no diving in shallow water; no dunking; and, a boy had to be a rated swimmer to be in the deep end of the pool. Freddie had known Garen before, but never saw him in the water before, and did not place him among the boys in the bleachers during the instruction session.

The defense offered parts of the deposition of Edward Johansen who had been a lifeguard-instructor at the Club for four years. He stated that during the swimming sessions there were usually two lifeguards in attendance, one in the water and one on the "bank". On the evening in question, the other guard, Larry Tolliver, had been in the pool with the boys and the witness was out of the pool. Tolliver left the pool area and the witness took his place in the water with the boys. Before doing so, he "scanned the area". He testified as to the pre-session instructions given the boys, as above noted. Normal procedure was to see that all boys were in the bleachers for these instructions. He did not testify that Garen was among them. He entered the shallow end of the pool and commenced the "war ball" game with twelve boys. After about fifteen minutes of the game, he got out of the water and told the boys to do so. Some of the boys discovered Garen at the bottom of the pool in the deep end. Johansen pulled Garen out and started artificial respiration and sounded a buzzer alarm. He stated that during the fifteen minute war ball game, he periodically checked the deep end. However, he did not remember the incident related by Freddie Green, of going to the deep end and telling Green and Garen to leave the water.

Larry Tolliver testified for the defendant. At the time of Garen's death, he was manager of the Club's pool. He testified as to the instructional session with the boys in the bleachers. He stated that during this session the rated swimmers and the nonswimmers were seated separately. He did not recall seeing Garen in either one of these groups in the bleachers.

During the first part of the swimming session, he was in the water with the boys and Johansen was on the "deck"; some boys were in the deep end; and they were not instructed to get out because Johansen was on the "deck". All totaled, there were ten or twelve boys at this swim session.

Later, Tolliver told Johansen he was leaving to obtain an "early lunch"; he left the pool area, went to the office, put on his clothes; he went upstairs, looked over the pool from an observation window, and could not remember seeing any boys in the deep end. He stated that when he left the pool area, Garen was definitely not one of the boys in the deep end.

Shortly after he left the observation window, he was advised that an alarm was sounded which signified trouble; he ran to the pool area; and, found Johansen giving artificial respiration to Garen. Tolliver testified that when he last observed the pool area from the observation window, Johansen was standing on the deck at the shallow end of the pool. He stated that the instructors can easily observe the deep end of the pool from the shallow end.

Plaintiff's case was submitted to the jury upon the hypothesis of the failure of the Club's lifeguards to keep a careful lookout to protect Garen, a nonswimmer in their charge, a duty which was owed to him. The defendant first argues that even though this failure might be said to appear from the record, it was clearly, as a matter of law, not the proximate cause of Garen's death.

It is clear from the above summary of the evidence that there was sufficient proof of the negligence, both direct and circumstantial, to submit the issue to the jury. Two certified adult lifeguard-instructors were in charge of not over twelve boys, some of them nonswimmers, including Garen; the direct evidence is uncontradicted that Garen was in a corner of the deep end of the pool where his body was later discovered; and, that there was clear visibility of this

end of the pool from the deck, from the shallow water and from the observation window; and, that Tolliver did not see him in this position of danger. The testimony of Freddie Green would indicate that Johansen in fact knew of Garen's presence there and told him to get out of the water. If the jury chose to believe this version, the conclusion inevitably follows that thereafter, Johansen failed to keep a lookout to make sure that Garen had obeyed this order and returned to the safety of shallow water. Negligent failure of the instructors to look out and observe, and thus protect Garen from his own inherently dangerous swimming deficiencies, is implicit in this record. A jury issue of negligence was established.

■■■ The matter of proximate cause is usually for the resolution of the trier of the facts and only rarely and under clear and compelling circumstances will a court declare as a matter of law that causation is lacking in a negligence case. As was said in *Pollard v. General Elevator Engineering Company*, 416 S.W.2d 90, 95 [2] (Mo.1967), "What is a proximate cause is ordinarily a jury question". While causal connection must be proved by facts and not left to speculation and conjecture, such rule does not mandate direct proof but causal connection may be established by circumstantial evidence to warrant and support a finding of proximate causation. *Pollard v. General Elevator Engineering Company*, supra, at l.c. 95 [1, 2]; *Kinealy v. Southwestern Bell Telephone Company*, 368 S.W.2d 400, 402 [1] (Mo.1963).

In the case of *McFarland v. Grau*, 305 S.W.2d 91, 97 [1] (Mo.App.1957), a drowning case, the court was confronted with the same vexing question of causation and there stated:

"We have examined many cases involving deaths from drowning, wherein the issue of the causal connection between defendant's negligence and the death of plaintiff's decedent was discussed. * * * Some of the cases hold as a matter of law that defendant's negligence was not the proximate cause of the drowning while

others hold the proximate cause was for the jury. *We think the better reasoning is found in the cases wherein defendant's negligence was found sufficient to make the issue of proximate cause one for the jury's determination.*" (Emphasis supplied)

■■ The test is whether or not reasonable minds could differ as to causation under the facts of each case. *McFarland v. Grau*, supra, at l.c. 101 [3].

■■ A corollary, applicable here, of this principle is found in the case of *Lottes v. Pessina*, 174 S.W.2d 893, 897 [4] (Mo.App. 1943), wherein the court said:

"The established rule is that it is not necessary where a defendant's negligence has been established, that plaintiff go further and show, in addition thereto, that the *particular* consequences of such negligence could have been foreseen by the defendant; all that plaintiff need show is that the injuries are the natural, although not the necessary and inevitable, result of defendant's negligence, that is, that such injuries were likely, under ordinary circumstances, to follow from defendant's negligent act. 38 Am.Jur., Negligence, p. 714, Sec. 62. * * *" (Emphasis supplied)

Club relies strongly in its brief on the case of *Schulte v. Graff*, 481 S.W.2d 596 (Mo.App.1972) as determinative of the question raised in its first point. This case is found to be inapposite on both the facts and the relationship of the parties and not controlling in the case at bar. The court there properly held that under the facts of *Schulte* no duty was owing by some of the named defendants to the decedent child and no actionable negligence was established as to the others.

The next question is whether Garen was guilty of contributory negligence as a matter of law. Defendant contends that the evidence supports his position in this regard and that the trial court erred in failing to direct a verdict for him at the close of the evidence and in failing to set aside the verdict and enter judgment for defendant.

The adjudicated cases demonstrate that, under certain circumstances, minors may be found guilty of contributory negligence as a matter of law. *Wilson v. White,* 272 S.W.2d 1, 6 [10] (Mo.App.1954). While the minority of a plaintiff does not preclude the defense of contributory negligence, the standard for judging the conduct of a minor is not that care and prudence that would be exercised by an adult but only that ordinarily exercised by one of the age, intelligence, discretion, knowledge and experience of the particular plaintiff under the same or similar circumstances. *Bridges v. Arkansas-Missouri Power Co.,* 410 S.W.2d 106, 111 [3] (Mo.App.1966); *Bollman v. Kark Rendering Plant,* 418 S.W.2d 39, 46 [11] (Mo.1967). In short, a child should be judged as a child and not as an adult. *Wilson v. White,* supra, at l.c. 6, and many cases cited therein. It has been historically and uniformly stated under Missouri decisions that a minor can be found guilty of contributory negligence as a matter of law only when the minor is shown to have knowledge and appreciation of the danger which could be occasioned by his act that contributed to his injury. *Bollman v. Kark Rendering Plant,* supra, at l.c. 46. As stated in *Turner v. City of Moberly,* 224 Mo. App. 683, 26 S.W.2d 997, 998 (1930), "Mere knowledge that injury might result, without appreciation of the risk of injury to which his conduct exposed him, is not sufficient." "Capacity to appreciate the danger is of vital importance in making the determination." *Bollman,* supra, at l.c. 46. This is because the law recognizes that thoughtless conduct, impulsive action and immature judgment are concomitants of youth; and that, although "(a) boy may have all the knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person. * * * " Citing *Burger v. Missouri Pac. R. Co.,* 112 Mo. 238, 20 S.W. 439, 441 (1892); *Holmes v. Missouri Pac. Ry. Co.,* 190 Mo. 98, 88 S.W. 623, 625 (1905). This rationale is well expressed in the able analysis of the Missouri cases in *Wilson v. White,* supra, at l.c. 7–8 [13–17]:

> "[13–17] Since '(t)here is no fixed rule of law by which to gauge, or scale by which to nicely weigh, the acts of a minor to determine if he is guilty of contributory negligence' [*Jackson v. Butler,* supra, [249 Mo. 342], 155 S.W. [1071] loc. cit. 1079], and since, in each case, not only the age of the minor but also 'the peculiar circumstances of the particular case, the knowledge and experience of the child in reference to those circumstances, and his capacity to appreciate the danger' must be taken into consideration [*Moeller v. United Rys. Co.,* 242 Mo. 721, 147 S.W. 1009, 1012(6)], *the question as to whether a minor servant has been guilty of contributory negligence, i. e., whether such servant knew and appreciated the dangers of his employment and the risk of injury, is usually for the trier of fact.*" (Emphasis supplied)

In *McGee v. Wabash R. Co.,* 214 Mo. 530, 114 S.W. 33, 37 (Mo.1908), the Supreme Court stated, "It may be taken as the most enlightened and accepted doctrine in the case of infants that generally the question of their contributory negligence is one for the jury."

Each of the cases cited by Club in support of this facet of its first point has been carefully reviewed and is found to be clearly distinguishable and not controlling here. In two of these cases [*McFarland v. Grau,* supra, and *Turner v. City of Moberly,* supra] the evidence clearly and unequivocally showed that the minors involved had been warned of and appreciated the danger involved; *Van Alst v. Kansas City,* 239 Mo. App. 346, 186 S.W.2d 762 (1945) involved the attractive nuisance doctrine and the 14 year old minor defendant had been forbidden to go swimming in the pond in which he drowned; and, *McGee v. Wabash R. Co.,* 214 Mo. 530, 114 S.W. 33 (1908) involved the contributory negligence of parents suing for the wrongful death of their minor son.

In the case at bar, Garen Brown was at the club pool to learn to swim and

there was no direct testimony that he had personally been given instructions and warnings of the danger of the deep water, only that it was customary to advise the nonswimmers of the rule forbidding them use of that end of the pool.

The court did not err in overruling Club's motion for a directed verdict at the close of all the evidence.

What has been said largely disposes of the Club's second point on this appeal. The trial court, as above stated, sustained plaintiff's motion for a new trial upon the ground of error in Instruction No. 4, in that such contributory negligence instruction failed to submit to the jury the required finding that Garen appreciated the danger and risk of his presence in the deep end of the Club's pool.

■ It is true, as urged by Club, that in determining the propriety of its contributory negligence instruction, the evidence must be viewed in the light most favorable to such submission, *Pritt v. Terminal R. R. Ass'n. of St. Louis*, 359 Mo. 896, 224 S.W.2d 119, 124 [9] (1949), and it was entitled to an instruction upon any theory supported by the evidence, *Stoessel v. St. Louis Public Service Co.*, 269 S.W.2d 41, 44 [3] (Mo.1954).

■ However, it is well settled law that an essential element of a verdict directing instruction may not be omitted therefrom unless such element is conceded. *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 595 [11] (Mo.1962).

■ An essential element and required finding to reach the conclusion of Garen's contributory negligence in this case was that he had knowledge and appreciation of the danger and risk occasioned by his conduct. *Bollman v. Kark Rendering Plant,* supra; *Turner v. City of Moberly,* supra; *Wilson v. White,* supra; *McGee v. Wabash R. Co.,* supra. This essential element of contributory negligence should have been hypothesized in Club's Instruction No. 4, and the trial court properly sustained plaintiff's motion for a new trial because of such omission.

The judgment is affirmed and the cause remanded for a new trial.

All concur.